JOAN B. LEIBOVICH & another[1] vs. MARK D. ANTONELLIS.

Middlesex. May 7, 1991. - July 3, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Evidence*, Expert opinion. *Practice, Civil*, Instructions to jury. *Damages*, Tort, Future earning capacity, Jury instructions respecting tax consequences. *Due Process of Law*, Retroactive application of statute. *Statute*, Retroactive effect. *Negligence*, Causing loss of consortium. *Parent and Child*, Companionship and society, Consortium.

At the trial of a negligence action, the judge properly within his discretion allowed the expert opinion testimony of a police officer concerning the speed of the automobile the defendant was driving at the time of the accident [571-572], and properly instructed the jury with respect to their assessing and weighing the soundness and credibility of the expert's opinion [572-573].

At the trial of a negligence action the judge properly refused to instruct the jury on the nontaxability of the verdict, where the subject of taxes on the verdict was not brought to the jury's attention. [573-575]

The court determined that G. L. c. 231, § 85X, authorizing parents to bring claims for loss of consortium of a child who has been injured through the negligence of a third party and who is dependent on the parents for support, which was expressly made applicable retroactively to certain causes of action, was reasonable and did not violate a litigant's constitutional guarantees of due process. [576-580]

CIVIL ACTION commenced in the Superior Court Department on February 12, 1987.

The case was tried before *James L. Vallely*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John P. Ryan* (*Robert G. Eaton* with him) for the defendant.

---

[1]Miguel A. *Leibovich*. The plaintiffs brought their action as individuals and as guardians of Philip C. Leibovich.

*W. Thomas Smith* (*Julia A. Thomas* with him) for the plaintiffs.

GREANEY, J. A jury in the Superior Court concluded that the defendant had operated his truck in a negligent manner, causing serious personal injuries to the plaintiffs' son. The jury returned verdicts in favor of the plaintiffs, which awarded them damages for personal injuries suffered by their son and damages for loss of his consortium. The defendant appealed from the judgments assessing the damages, and we transferred the case to this court on our own motion. We conclude that the trial judge properly exercised his discretion in his admission of expert testimony, and in his refusal to instruct the jury on the fact that any award they might make would not be subject to income taxes. In addition, we conclude that the defendant's constitutional rights to due process were not violated by the retroactive application to this case of G. L. c. 231, § 85X (1990 ed.), the loss of filial consortium statute. Consequently, we affirm the judgments.

From the evidence presented at trial, the jury could have found the following facts. On the morning of December 14, 1985, Marc Albert was driving east on Beacon Street in Newton, with Philip Leibovich sitting on the passenger side. Mark Antonellis was driving west on the same street in a pickup truck, approaching Albert's vehicle from the opposite direction. The accident occurred when Albert attempted to make a left turn and Antonellis' truck struck the passenger side of Albert's automobile, severely injuring Philip.

Joan and Miguel Leibovich, the parents and guardians of Philip (plaintiffs), filed suit on February 12, 1987, on behalf of their son against Albert and Antonellis (and other individuals who were subsequently dropped from the case) for negligence resulting in personal injuries to Philip. The plaintiffs also asserted claims in their own right for loss of the consortium, society, affection, and companionship of their son. In May, 1989, Albert and Antonellis filed motions to dismiss the loss of consortium claims on the ground that a then recently decided case of this court, *Norman* v. *Massachusetts Bay Transp. Auth.*, 403 Mass. 303 (1988), held that no

claim exists by a parent for a loss of his or her child's consortium resulting from injuries to the child. These motions were allowed without prejudice to their being reconsidered by the trial judge.

On September 11, 1989, the plaintiffs filed a motion to reconsider the dismissal of their claims, relying upon the existence of a statute passed subsequent to the *Norman* decision, which authorizes parents to bring claims for loss of consortium of a child who has been injured through the negligence of a third party and who is dependent on the parents for support. See G. L. c. 231, § 85X (1990 ed.), as inserted by St. 1989, c. 259.[2] This motion was allowed. A trial was held, and the jury returned verdicts against Albert (who has not appealed) and Antonellis, in the amount of $5,500,000 for the personal injuries sustained by Philip and $250,000 for each parent for loss of consortium.

1. *Qualifications of an expert witness.* The defendant argues that the trial judge committed error by not expressly ruling on the qualifications of an expert witness and by instructing the jury that it was up to them to decide if the witness was qualified. For the reasons stated below, we conclude that there was no error.

The defendant's liability was premised on the jury's finding that he had been traveling well above the posted speed limit of twenty-five miles per hour at the time of the accident. There was ample testimony at trial as to the defendant's speed. An eyewitness to the accident testified that she estimated that the defendant's truck had been traveling between forty-five and fifty miles per hour prior to the collision. The defendant testified that he was traveling twenty-five to

---

[2]General Laws c. 231, § 85X (1990 ed.), provides:

"The parents of a minor child or an adult child who is dependent on his parents for support shall have a cause of action for loss of consortium of the child who has been seriously injured against any person who is legally responsible for causing such injury."

thirty miles per hour at the point of impact, after applying his brakes and skidding for thirty-six feet.[3]

A police officer, who had investigated and reconstructed the accident, also testified as an expert concerning the defendant's speed. Prior to offering his opinion, the officer was questioned extensively as to his qualifications in the area of accident reconstruction. When the officer offered his opinion as to the defendant's speed, the defendant's attorney objected that the officer was not qualified to render such an opinion. The trial judge replied, "May have it."[4] Based upon his measurements of the skid marks, observations of the accident scene, and tests of the road surface, the officer testified that the defendant had been traveling forty-four miles per hour prior to applying his brakes.

The defendant argues that the judge failed to rule on the officer's qualifications as a preliminary question of fact. It is true that the judge did not make an express ruling as to the qualifications of this expert witness. However, the fact that the officer's qualifications had previously been laid out, and the judge's allowance of his testimony, clearly imply a prior determination by the judge that the witness was qualified,

---

[3]The jury also had before them a record of the Newton Division of the District Court which indicated that the defendant had entered a guilty plea to a charge of speeding in connection with the accident.

[4]The following exchange took place between the plaintiffs' attorney, the officer, the defendant's attorney, and the judge:

PLAINTIFFS' COUNSEL: "Based on the measurements you made on the marks and upon your observations at the scene and upon the testing that you did on the road surface, did you arrive at an opinion regarding the speed of the pickup truck before the time that the skid marks — the brakes were applied?"

DEFENDANT'S COUNSEL: "Objection. I don't believe a full qualification has been laid for this gentleman to render such an opinion."

THE COURT: "May have it."

PLAINTIFFS' COUNSEL: "I may have it?"

THE COURT: "Yes."

PLAINTIFFS' COUNSEL: "Did you arrive at an opinion?"

THE WITNESS: "Yes, I did."

PLAINTIFFS' COUNSEL: "What is that opinion?"

THE WITNESS: "The speed of the pickup truck prior to braking was 44 miles per hour."

through his experience and training, to offer an opinion as to the speed of the defendant's truck. See *Commonwealth* v. *Cantres*, 405 Mass. 238, 246 (1989); *Delano Growers' Coop. Winery* v. *Supreme Wine Co.*, 393 Mass. 666, 682 (1985). It was within the judge's discretion to make this determination, and he did not abuse that discretion, or make an error of law, in admitting the officer's opinion. See *Delano Growers' Coop. Winery, supra* at 682; *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 384 (1980); *Commonwealth* v. *Boyd*, 367 Mass. 169, 183 (1975).

The defendant asserts that any ruling by the judge on the officer's qualifications was ambiguous, and argues that the judge, in his jury instructions, committed error by indicating to the jury that it was solely their function to determine whether the officer was qualified to render his opinion. We have held that it is error for a judge to refuse to make a preliminary finding as to the qualifications of an expert witness and to leave the question for the jury. See *Winthrop Prods. Corp.* v. *Elroth Co.*, 331 Mass. 83, 86 (1954); P.J. Liacos, Massachusetts Evidence 113 (5th ed. 1981). However, it is only error when the judge expressly leaves the matter to the jury. See *Boyd, supra* at 183.

Upon examining the jury instructions, we are satisfied that the judge did not expressly instruct the jury to make a threshold finding as to the officer's qualifications as an expert.[5] The instructions (key portions emphasized below) consistently referred to the officer as an "expert," and clearly

---

[5]The relevant portion of the jury instructions provided:

"In this case you have had an *expert* testifying as to matters that referred to the liability of the case. He reconstructed the accident. *He is an expert. He is permitted to do that because of his special training and knowledge, just as a doctor can qualify as an expert, because of his training and knowledge.*

"*The rule is that if a person has knowledge and experience beyond that of the ordinary person in the community, he can testify not only as to facts but as to opinions, as the expert did on the reconstruction as to what his opinion was as to the speed of the Antonellis vehicle and other things that he testified to.*

"They are offered to the jury for the jury's guidance, and you make a judgment about the *expert* and their qualifications. *The witnesses initially*

indicated that he had already been qualified by the court, because of his "knowledge and experience," to render expert opinions on this matter.

When the judge instructed the jury to evaluate the officer's qualifications, he did not improperly delegate a judicial function to the jury. Once the judge makes a preliminary finding that a witness is qualified to render expert opinion, as was done here, the jury may continue to evaluate the witness's qualifications. The jury's function, vis-à-vis an expert witness, is to assess the soundness and credibility of his opinions. The jury is entitled to discount, or disbelieve, the expert's testimony. See *Banaghan* v. *Dewey*, 340 Mass. 73, 79 (1959); *Dodge* v. *Sawyer*, 288 Mass. 402, 408 (1934). One factor in assessing the strength of expert testimony is the expert's knowledge and experience. A jury may properly evaluate that knowledge and experience in deciding what weight to give the opinion when reaching a final decision.

The judge's instructions to the jury, advising them to evaluate the officer's qualifications, merely articulated an element of the jury's function of assessing and weighing the soundness and credibility of an expert opinion. There was no error.

2. *Requested jury instructions regarding tax consequences.* The defendant claims that he is entitled to a new trial because the subject of income taxes had been raised during the trial, and the judge refused his request for an instruction telling the jury not to consider taxes when arriving

---

*are qualified by the Court,* but that doesn't affect the function of the jury to pass upon the qualifications of that particular witness.

"It is the jury's function to determine the qualifications of the witness ultimately and the effect of that testimony on the judgment of the jury. It is for your guidance in helping you. If it's helpful, you use it. If you believe it, use it. If you find it not believable, don't use it.

. . .

"Now, the *expert witness,* like the ordinary witness, is subject to your examination and judgment. If you believe the testimony of that witness, then you may be guided in your ultimate judgment on the issues that you have to determine by his testimony. If you find that he is not qualified, he wasn't truthful, credible, then you put it aside and make your judgment without reference to it." (Emphasis added.)

at the amount of their verdicts. We conclude that the judge did not abuse his discretion in refusing the defendant's requested instruction.

A professional economist testified for the plaintiffs concerning the present value of their son's lost earning capacity and future medical expenses. The economist testified that the present value of the son's lost earning capacity was $1,583,412, and the present value of his future medical costs was $8,129,082. On cross-examination, the expert was asked by counsel for one of the defendants whether he had considered income tax consequences in arriving at these figures. He replied that he did not consider taxes when calculating the medical expenses themselves. However, he stated that, in arriving at a figure representing the present value of the son's lost earning capacity, he had calculated the son's estimated gross income over his work life and reduced that amount by twenty percent for taxes, in order to reflect actual net pay. In addition, the economist indicated that the amount of interest he had included in computing the final sums had been reduced by the income tax that would be due on it. No one contends that the economist's testimony was improper. See *Norfolk & W. Ry.* v. *Liepelt*, 444 U.S. 490, 493-494 (1980); *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 368 (1980).

The defendant requested the judge to instruct the jury not to "increase the amount of your verdict by reason of federal, state or local income taxes, since the amount awarded to the plaintiff is not taxable income to plaintiff within the meaning of the tax laws." The judge responded that, while he sometimes instructs a jury that they should not consider the subject of taxation, he would not do so in this case.

It is undisputed that a plaintiff's recovery for injuries in a civil case like this one is not subject to Federal or State income taxes. See 26 U.S.C. § 104 (a)(2) (1989); G. L. c. 62, § 2 (*a*) (1990 ed.); *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 387 (1980); *Griffin*, *supra* at 368. Thus, it would have been wrong for the jury to have increased their verdicts in the belief that taxes would be owed by the plaintiffs. If the judge believed that the jury might be inclined to do so, in his

discretion, he could have instructed them that they were not to consider taxes in computing their verdicts. As we have stated: "Where the subject of income taxes on the amount of the verdict has been brought to the attention of the jury in a serious way, the judge must exercise his best judgment and discretion, and frank disclosure that the amount of the verdict is not subject to Federal or State income taxation may be the better course." *Griffin, supra* at 370. The defendant argues that the testimony of the economist, summarized above, may have led the jury to increase their award to compensate for taxes, and that the judge should have given the requested instruction.

We do not think that the subject of taxes on the verdict was seriously brought to the jury's attention. The economist's testimony went essentially to the method by which he had arrived at his projections and made no reference to the issue of whether the verdicts would be taxable. Counsel for the parties did not introduce the subject in argument to the jury, and the jury itself did not make any inquiry on the subject. See *Id.* Further, the testimony indicated that the economist had made his estimates tax neutral by making a deduction for taxes that might be due on the sums calculated. The point most probably was not lost on the jury. There is no indication that they may have increased their verdicts to compensate for taxes. Indeed, the contrary seems to be the case, because the jury's award was more than $4 million dollars less than the economist's projections.

"A trial judge has considerable discretion in giving the applicable law to the jury, and the judge is under no obligation to charge the jury in the specific language requested by a party." *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 715 (1990). The judge may have determined, in his discretion, that the requested instructions would create confusion. See generally Annot., Propriety of Taking Income Tax into Consideration in Fixing Damages in Personal Injury or Death Action, 16 A.L.R. 4th 589, 594-605 (1982). We conclude that the judge did not abuse his discretion by refusing to instruct the jury as to the nontaxability of the verdict.

3. *Retroactive application of G. L. c. 231, § 85X.* The defendant claims that retroactive application of G. L. c. 231, § 85X, to this case violates his constitutional right to due process under the Massachusetts and Federal Constitutions. See Declaration of Rights to the Mass. Const. arts. I, X, and XII; U. S. Const. Amend. XIV, § 1. There is no question of statutory construction in this case, as the Legislature's intentions with regard to retroactivity are expressly stated.[6] In the bill enacting G. L. c. 231, § 85X, the Legislature provided: "This act shall be effective to all causes of action which accrued on or after September first, nineteen hundred and eighty-six and to all similar causes of action now pending in any court in the commonwealth." St. 1989, c. 259, § 2. The statute is clearly intended to apply retroactively, and covers the plaintiffs' action, as their case was pending when the statute was passed.

The defendant's argument, thus, amounts to a facial challenge to the constitutional validity of G. L. c. 231, § 85X, itself, or at least to that portion of the statute which applies retroactively. In asking us to declare the statute unconstitutional, the defendant bears a heavy burden. See *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 190 (1978). A legislative enactment carries with it a presumption of constitutionality, and the challenging party must demonstrate beyond a reasonable doubt that there are no "conceivable grounds" which could support its validity. *Zeller* v. *Cantu*, 395 Mass. 76, 84 (1985); *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 235 (1983); *Klein* v. *Catalano*, 386 Mass. 701, 706-707 (1982). We inquire only "whether the statute falls within the legislative power to enact, not whether it comports with a court's idea of wise or efficient legislation." *Boston* v. *Keene Corp.*, 406 Mass. 301, 305 (1989).

---

[6]This case is distinguished from cases relied upon by the defendant where the major inquiry for the court was to determine the Legislature's intentions as to retroactivity. See, e.g., *Riley* v. *Davison Constr. Co.*, 381 Mass. 432 (1980); *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624 (1974); *Hein-Werner Corp.* v. *Jackson Indus.*, 364 Mass. 523 (1974).

In the case of retroactive statutes, we have stated the following rule: "Only those statutes which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional." *American Mfrs. Mut. Ins. Co.*, *supra* at 189-190. In evaluating the reasonableness of a retroactive statute, we have weighed three principle considerations: the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights affected retroactively; and the extent or scope of the statutory effect or impact. See *Boston* v. *Keene Corp.*, *supra* at 311-312; *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. 416, 423 (1986); *Nantucket Conservation Found.* v. *Russell Management, Inc.*, 380 Mass. 212, 215-216 (1980); *American Mfrs. Mut. Ins. Co.*, *supra* at 191. See also Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 697 (1960).

The Legislature's passage of G. L. c. 231, § 85X, was clearly a response to this court's decision in *Norman* v. *Massachusetts Bay Transp. Auth.*, 403 Mass. 303 (1988), which had held that a parent has no common law cause of action for loss of his or her child's consortium resulting from injuries to the child. *Monahan* v. *Methuen*, 408 Mass. 381, 388 (1990). The new statute explicitly provides for such a cause of action. The Legislature may have been motivated by at least three considerations of public interest to enact G. L. c. 231, § 85X. First, the statute furthers "the long established policy of this Commonwealth of protecting the integrity and sanctity of the family unit." *Norman*, *supra* at 313 (Liacos, J., dissenting). Cf. *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 516 (1980) ("Protecting a child's need for parental love and nurture is the express legislative policy of this Commonwealth"). The Legislature may have determined that because of the long-standing existence of this policy, the statute should apply not only to future lawsuits, but also to lawsuits which were pending.

In addition, by applying the statute retroactively, the Legislature may have intended to correct what had been an in-

consistency in the law. As then Justice Liacos stated in his dissent in *Norman*: "Parents, as next of kin, may recover for loss of consortium after the death of a child in a wrongful death action. . . . There should be a consistency between our statutory law and our case law. It would be anomalous to take the position that, if a child is severely injured, but does not die, the parents may not recover. . . . The reasons for allowing the former militate in favor of the latter." (Citations omitted.) *Norman, supra* at 311 (Liacos, J., dissenting). Finally, the Legislature may have decided that, in order to effectively spread the costs of accidents such as this throughout society, the statute should be applied retroactively. See Slawson, Constitutional and Legislative Considerations in Retroactive Lawmaking, 48 Calif. L. Rev. 216, 224 (1960). Cf. *Karlin* v. *Massachusetts Turnpike Auth.*, 399 Mass. 765, 770 (1987).

We next address the nature of the right affected retroactively by G. L. c. 231, § 85X. The defendant essentially asserts a right not to be subject to loss of consortium claims by parents when he negligently injured their child, as provided for by the law as it existed when the accident occurred and when the plaintiffs' lawsuit was filed. For the reasons stated below, we conclude that this right does not rise to the level of a property interest that is entitled to protection under the Massachusetts and United States Constitutions. See *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779, 785 (1975).

Generally, persons challenging a retroactive statute must show that they acted in reasonable reliance upon the previous state of the law. See, e.g., *Keniston* v. *Assessors of Boston*, 380 Mass. 888, 905 (1980); *American Mfrs. Mut. Ins. Co.*, *supra* at 193-194. See also Slawson, *supra* at 225-226. The defendant does not make, and could not credibly make, any argument that he would have acted differently had he known that G. L. c. 231, § 85X, would be enacted. See *French* v. *Dwiggins*, 9 Ohio St. 3d 32, 35-36 (1984).[7] The new statute in no way alters the standards for determining what kind of

---

[7]One commentator has stated:

behavior constitutes negligence. The defendant always had the obligation to drive in a non-negligent manner, and this obligation was not affected by G. L. c. 231, § 85X. Cf. *Mulligan* v. *Hilton*, 305 Mass. 5, 10 (1940). The statute merely expands the class of potential plaintiffs who may recover for their injuries caused by the negligence of tortfeasors such as the defendant.

It is not important that the statute increases the consequences of the defendant's prior negligence. The defendant cannot reasonably claim a right to act negligently without an effect on his liability in damages beyond what had been provided for in the case law. *Welch* v. *Mayor of Taunton*, 343 Mass. 485, 488 (1962). See also *Danforth* v. *Groton Water Co.*, 178 Mass. 472, 477 (1901) (There is no such thing as a vested right to do wrong). This is especially true given the fact that, prior to our decision in *Norman*, the case law had arguably been moving toward allowing parents to bring loss of consortium actions for injuries negligently inflicted on their children. See *Norman*, *supra* at 309-316 (Liacos, J., dissenting); *Ferriter*, *supra* at 510-512. See also Annot., Parent's Right to Recover for Loss of Consortium in Connection with Injury to Child, 54 A.L.R. 4th 112 (1987).

Finally, the scope of G. L. c. 231, § 85X, is not excessive. Because the statute will affect a relatively small number of pending cases, it is highly unlikely that "society's exposure to the threat of financial ruin will be intolerable." *Norman*, *supra* at 305. In addition, the statute is narrowly drawn to treat the problem perceived by the Legislature. See *American Mfrs. Mut. Ins. Co.*, *supra* at 196. Given the strength of the public interest that motivated the Legislature to enact the statute, the comparative weakness of the rights asserted

---

"[T]here are types of laws which would not precipitate changes in behavior even if they were widely known. Most tort law and practically all internal court law falls within this category. There is usually little danger of defeating reasonable expectations where statutes modifying such law are applied retroactively." Greenblatt, Judicial Limitations on Retroactive Civil Legislation, 51 Nw. U. L. Rev. 540, 567 (1956).

by the defendant, and the narrow range of cases that will be affected by the statute, we conclude that retroactive application of G. L. c. 231, § 85X, is reasonable and therefore does not violate the defendant's constitutional guarantees of due process. See *Boston* v. *Keene Corp.*, *supra* at 313.

*Judgments affirmed.*