FRANCIS X. ST. GERMAINE, THIRD, & others[1] *vs.*
MICHAEL E. PENDERGAST.

Barnstable. October 5, 1993. - December 29, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, & O'CONNOR, JJ.

*Statute*, Retroactive effect. *Due Process of Law*, Retroactive application of
statute. *Res Judicata*.

The amendment to G. L. c. 143, § 51, effected by St. 1992, c. 66, retroac-
tively imposed liability on a certain homeowner, without regard to
fault; where the homeowner had been found not liable in an action
brought under that statute prior to its amendment, such retroactive ap-
plication to him was unreasonable and offended fundamental fairness in
violation of art. 10 of the Massachusetts Declaration of Rights. [702-
704] WILKINS, J., concurring. O'CONNOR, J., concurring.

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 12, 1992.

A motion to dismiss was heard by *Elizabeth J. Dolan*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Paul W. Shaw* (*Dale C. Schneider* with him) for the
plaintiffs.

*Brian J. Mone & Stephen M.A. Woodworth* (*Peter E.
Heppner* with them) for the defendant.

*Patricia Bobba Donovan & Thomas E. Peisch*, for Massa-
chusetts Defense Lawyers Association, amicus curiae, sub-
mitted a brief.

*Joseph L. Duffy, Jr.*, for Gary R. Larson, amicus curiae,
submitted a brief.

---

[1]Francis X. St. Germaine, Jr., and Bette J. St. Germaine.

NOLAN, J. The plaintiffs, Francis X. St. Germaine, III (Kip),[2] and his parents, appeal from a Superior Court judge's dismissal of their action against Michael E. Pendergast for failing to state a claim upon which relief can be granted. This action, brought pursuant to G. L. c. 143, § 51, as amended by St. 1992, c. 66, is the second action the plaintiffs have brought against Pendergast to recover for injuries resulting from an accident on June 15, 1989. Kip seeks recovery for the severe and permanent injuries he sustained when a wall being erected collapsed on him during the construction of Pendergast's home. His parents seek recovery for loss of filial consortium. We granted the plaintiffs' application for direct appellate review. Because we agree with the Superior Court judge that the retroactive application to Pendergast of St. 1992, c. 66, amending G. L. c. 143, § 51, would violate art. 10 of the Declaration of Rights of the Massachusetts Constitution, we affirm the judge's dismissal of the plaintiffs' complaint.

The relevant facts follow. In recounting these facts, we repeat many of the facts we provided in our decision in the prior action between these two parties. *St. Germaine* v. *Pendergast*, 411 Mass. 615, 616-618 (1992). On November 18, 1988, Pendergast filed applications for both a building permit and a homeowner license exemption with appropriate local officials to construct a single-family home on his property. He received both in due course. The homeowner license exemption permitted Pendergast to construct his home without hiring a general contractor or a licensed construction supervisor. He subsequently hired Lacey & Lacey Custom Builders (Lacey & Lacey) to frame the house. Kip was employed by Lacey & Lacey as a laborer. On June 15, 1989, several crew members of Lacey & Lacey, including Kip, attempted to lift a prefabricated wall to the second floor. While

---

[2]In a prior action between these same parties, we referred to this plaintiff by his diminutive, "Kip." *St. Germaine* v. *Pendergast*, 411 Mass. 615, 616 n.3 (1992). We again shall refer to him as Kip so as to distinguish him from his father, plaintiff Francis X. St. Germaine, Jr.

they were doing so, they lost control of the wall and it fell on Kip, rendering him a paraplegic.

The plaintiffs brought suit against Pendergast on two claims.[3] In addition to a claim based on common law negligence, the plaintiffs claimed that Pendergast was liable for violating the State Building Code and related provisions of law. In this second claim, the plaintiffs sought recovery under G. L. c. 143, § 51 (1990 ed.), which provided, in pertinent part, that the "owner . . . of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any of said provisions." In this second claim, the plaintiffs also asserted that, by obtaining a building permit in his own name and acting as his own contractor, Pendergast had voluntarily assumed the role of "general contractor" and was liable for Lacey & Lacey's violations of the State Building Code.

A judge in the Superior Court granted Pendergast's motion for summary judgment on the second claim. A jury subsequently found for Pendergast on the first. This court affirmed the judgment for Pendergast on both claims. *Id.* at 617. In doing so, we held that, although G. L. c. 143, § 51 (1990 ed.), could provide the basis for civil liability in certain circumstances, it was apparent from the specific structures listed in § 51 and from the definition of "building" contained in G. L. c. 143, § 1 (1992 ed.), that § 51 did not apply to a single-family home under construction. *Id.* at 619. We also rejected the plaintiffs' contention that Pendergast's taking out a building permit in his own name and receiving a home-

---

[3]Kip's parents also brought a claim against Lacey & Lacey for loss of filial consortium. The jury found Lacey & Lacey negligent and held them liable to the parents for loss of consortium. This court subsequently reversed the judgment against Lacey & Lacey, holding that G. L. c. 152, § 24, the exclusive remedy provision of the Workers' Compensation Act, barred such recovery. *St. Germaine, supra* at 627.

owner exemption imposed upon him a nondelegable duty to assure compliance with the State Building Code. *Id.* at 620.

In a clear response to our decision, the Legislature enacted St. 1992, c. 66, inserting two sentences into G. L. c. 143, § 51, one of which provides that "[a]ny person who obtains a permit pursuant to the state building code to erect, construct, or demolish a building or structure shall be liable to any worker or other person for all injuries and damages that result from a failure to provide a safe workplace, or caused by a violation of the state building code or other codes, by-laws, rules and regulations applicable to the construction site." This legislation was approved on June 12, 1992, three days before the three-year statute of limitations would have barred the plaintiffs' suit. The Legislature declared the act to be an emergency law and to become effective immediately. In addition, § 2 of c. 66 provides that the act is to be applicable to all causes of action arising on or after November 1, 1988, a little over two weeks before Pendergast had applied for his building permit.

Later that same day, the plaintiffs commenced this action against Pendergast, claiming liability solely under G. L. c. 143, § 51, as amended. They alleged that, pursuant to the amended G. L. c. 143, § 51, Pendergast, as the homeowner to whom a building permit was issued, was responsible to assure compliance with the State Building Code and related provisions of law and to provide a safe workplace to all workers employed during the construction of his home.

Pendergast moved to dismiss this action, arguing that the doctrine of res judicata and arts. 10 and 30 of the Massachusetts Declaration of Rights barred this action. Pendergast also argued that § 51, as amended, was inapplicable because it fails to cover a single-family home under construction. The judge granted this motion on the ground that the retroactive application of c. 66 to Pendergast violated art. 10. The judge also ruled that the doctrine of res judicata did not bar this action and declined to address Pendergast's two other arguments. The plaintiffs appeal from the judgment of dismissal and Pendergast cross appeals from the judge's subsidiary rul-

ing that the doctrine of res judicata did not bar this action. We do not reach the issue of res judicata because we decide the case under art. 10.

The plaintiffs contend that the judge erred by ruling that the retroactive application to Pendergast of St. 1992, c. 66, violated art. 10. There can be no doubt that the Legislature intended c. 66 to apply retrospectively. Section 2 of c. 66 provides: "This act shall be applicable to causes of action arising on or after November first, nineteen hundred and eighty-eight." Where it appears that the Legislature intended an act to be retroactive, this intent should be given effect in so far as the Massachusetts and Federal Constitutions permit. *Canton v. Bruno*, 361 Mass. 598, 606 (1972). Also, there can be no doubt that St. 1992, c. 66, covers the plaintiffs' action, since Pendergast applied for his building permit after November 1, 1988.

It is perfectly clear that G. L. c. 143, § 51, as amended, covers a single-family home under construction. Pendergast, in his brief, argues that it does not apply. The brief of one of the amici curiae asserts this point. The Superior Court judge did not reach this issue. However, the statutory language compels the conclusion that § 51, as amended, embraces a single-family house.

As this court has made clear, only those retroactive statutes "which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional." *Leibovich* v. *Antonellis*, 410 Mass. 568, 577 (1991), quoting *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 189-190 (1978).[4] In deciding whether the retroactive provision of c. 66 is unconstitutional as applied to Pen-

---

[4] A retroactive statute determined to be unreasonable under this analysis is unconstitutional under the due process clause of the Fourteenth Amendment to the United States Constitution and the cognate provisions of the Massachusetts Constitution, which include art. 10. *Nantucket Conservation Found., Inc.* v. *Russell Management, Inc.*, 380 Mass. 212, 215 n.4 (1980). In his brief, Pendergast argues that the retroactive application of c. 66 violates his rights guaranteed under the Federal due process clause. In their reply brief, the plaintiffs argue that this issue is not properly before the court for appellate review because Pendergast never raised it

dergast, we are mindful of various considerations which we most recently outlined in *Leibovich, supra* at 576. A statute is presumed to be constitutional, and the challenging party must demonstrate beyond a reasonable doubt that there are no conceivable grounds supporting its validity. *Id.*, and cases cited. The challenging party bears a heavy burden and every rational presumption in favor of the statute's validity is made. *American Mfrs. Mut. Ins. Co., supra* at 190. A court is only to inquire into whether the Legislature had the power to enact the statute and not whether the statute is wise or efficient. *Leibovich, supra* at 576.

As we noted above, the Legislature's enactment of St. 1992, c. 66, was in clear response to our decision in *St. Germaine* v. *Pendergast*, 411 Mass. 615 (1992). However, if the plaintiffs are allowed to maintain this action, Pendergast will be held to an obligation which the law did not require of him at the time of the incident. It has already been determined that Pendergast is not liable under the law as it existed at the time in question. *St. Germaine* v. *Pendergast, supra* at 618-621. The retroactive application of c. 66 would subject Pendergast's prior conduct to a standard in stark contrast to the state of the law at the time in question and on which he could have reasonably relied. Despite the plaintiffs' contentions to the contrary, the amendment to G. L. c. 143, § 51, significantly changes the obligations imposed on Pendergast in obtaining a building permit. Chapter 66 did not merely codify existing duties, as is clear from our opinion in the first action between these parties. *St. Germaine, supra* at 618-621. Chapter 66 provides for civil liability for violations of the State Building Code and related provisions of law against any person who obtains a building permit.

The substantial effects the statute would have on Pendergast's rights, holding his past actions to a new and significant obligation, offset any public interest there may be in providing retroactively for civil liability for violations of the State

---

below. We need not address this issue because we decide the case entirely under art. 10.

Building Code. We conclude that the retroactive application of St. 1992, c. 66, amending G. L. c. 143, § 51, to Pendergast is unreasonable and violates art. 10.

In these circumstances, fairness is the touchstone of due process and to hold Pendergast liable to new obligations would offend fundamental fairness. A statute that retroactively imposes liability, without regard to fault, on a person who could reasonably have relied on the law at the time he elected to perform an act on which the new statutory liability is sought to be based violates art. 10, where no significant public interest is served by creating liability.

.                                        *Judgment affirmed.*

WILKINS, J. (concurring). The court passes by a non-constitutionally based issue (res judicata or claim preclusion) to hold St. 1992, c. 66, unconstitutional. It is impolitic to decide a constitutional question before disposing of each issue that might make unnecessary a decision and a possible confrontation on a constitutional issue. See *Commonwealth* v. *Colon-Cruz*, 393 Mass. 150, 180-181 (1984) (Wilkins J., dissenting).

I join the result reached by the court because the res judicata issue was correctly decided below against the defendant and because the statute violates art. 10 of the Massachusetts Declaration of Rights. The earlier judgment in favor of the defendant, quite obviously, did not dispose of the plaintiffs' current claim which is based on a statutory right that was purportedly created after the entry of the earlier judgment. Claim preclusion thus has no role to play. The Legislature enacted c. 66 with the express intention that it should apply to the facts of this case.

O'CONNOR, J. (concurring). I agree with the court that St. 1992, c. 66, is unconstitutional for the reasons the court has expressed. However, I also agree with Justice Wilkins, for

the reason he has expressed, that the court should not have reached the issue of constitutionality without first determining whether the plaintiffs' claims are barred by the doctrine of res judicata. If the claims are barred by that common law doctrine, as I think they are, it is inappropriate for the court to address the constitutional question.

Justice Wilkins states that "quite obviously" res judicata does not bar the plaintiffs' claims and that "[t]he Legislature enacted c. 66 with the express intention that it should apply to the facts of this case." *Ante* at 704. I find no language in c. 66 that either suggests that the Legislature ever considered the doctrine of res judicata or that expressly or impliedly overrides the application of that doctrine to this case.

"The doctrine of res judicata is founded on the necessity for finality in litigation. 'Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.'. . . Considerations of fairness and the requirements of efficient judicial administration dictate that an opposing party in a particular action as well as the court is entitled to be free from continuing attempts to relitigate the same claim. For this reason the principle of res judicata requires that a valid and final personal judgment rendered by a court of competent jurisdiction over the parties and the subject matter serve as a bar to any further proceedings between the same parties on the same claim." (Citations omitted.) *Wright Mach. Corp.* v. *Seaman-Andwall Corp.*, 364 Mass. 683, 688 (1974). Two claims are the same for purposes of the doctrine of res judicata when they "grow[ ] out of the same transaction, act, or agreement, and seek[ ] redress for the same wrong." *Fassas* v. *First Bank & Trust Co.*, 353 Mass. 628, 629 (1968), quoting *Mackintosh* v. *Chambers*, 285 Mass. 594, 596 (1934). See *Hermes Automation Technology, Inc.* v. *Hyundai Elec. Indus. Co.*, 915 F.2d 739, 750 (1st Cir. 1990) (observing that "[u]nder Massachusetts principles of claim preclusion, a final judgment in one action generally precludes the plaintiff from bringing another action

against the same defendant if the second action arises out of the same transaction or occurrence as the prior action"); Restatement (Second) of Judgments § 24 (1982) (a claim extinguished by the doctrine of res judicata "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose").

The plaintiffs claim in this case that they are entitled to be compensated by the defendant because of injuries the plaintiff Francis X. St. Germaine, III, received on June 15, 1989, as a result of certain conduct of the defendant. In a prior case, they made the same claims — based on the same set of facts and underlying occurrences — and those claims were concluded by a final judgment for the defendant. They are not entitled to relitigate the same case simply because the law has changed since the first case ended.

The plaintiffs in this case presented all of their legal theories — negligence and strict liability — in the first action. The defendant was adjudged not liable under both theories. Today, under the new statute, if it were constitutional, the plaintiffs' strict liability claims would likely prevail, but that does not change the fact that the plaintiffs have already had their day in court. The defendant is entitled to rely on the first judgment.