KATHLEEN PIELECH & another[1] *vs.* MASSASOIT GREYHOUND,
INC. (and a companion case).

Bristol. December 1, 2003. - March 11, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Statute,* Retroactive application, Validity. *Due Process of Law,* Retroactive application of statute. *Res Judicata. Practice, Civil,* Amendment, Complaint.

Retroactive application of the 1997 amendment of G. L. c. 151B, § 4 (1A), prohibiting employment discrimination based on sincerely held religious beliefs, whether or not shared by members of an organized religion, violated the defendant employer's due process rights under the Fourteenth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights, because the changes to the statute created new legal liability on the part of the defendant that did not exist when the plaintiffs' complaint arose. [192-196]

In a civil action alleging employment discrimination under G. L. c. 151B, § 4 (1A), a Superior Court judge neither erred nor abused his discretion in denying the plaintiffs' motion to amend the complaint to add a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994), given the procedural permutations of the case and the lateness of the plaintiffs' motion. [196-198]

CIVIL ACTION commenced in the Superior Court Department on June 15, 1993.

The case was heard by *John J. O'Brien,* J., on motions for summary judgment.

Following review by this court, 423 Mass. 534 (1996), a motion to amend the complaint was heard by *Mitchell J. Sikora, Jr.,* J., and the case was consolidated by him with a second action commenced in the Superior Court Department on February 28, 1997.

The consolidated cases were tried before *John A. Tierney,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

[1]Patricia Reed.

*Harvey Weiner* (*Barry D. Ramsdell & Michael P. Duffy* with him) for the plaintiffs.

*Joel A. Kozol* (*Christine P. Deshler* with him) for the defendant.

IRELAND, J. This case has a long procedural history, which we discuss below, concerning the same plaintiffs who were before this court in *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534 (1996), cert. denied, 520 U.S. 1131 (1997) (*Pielech I*). In *Pielech I*, this court declared G. L. c. 151B, § 4 (1A), unconstitutional. Subsequently, the Legislature amended the statute, including a provision to make the amendment retroactive. St. 1997, c. 2. After a jury trial in the Superior Court where the defendant was found, inter alia, liable for discrimination, the parties filed cross appeals. We transferred the case here on our own motion.

Because we conclude that the changes to G. L. c. 151B, § 4 (1A), have a substantial effect on the defendant's rights, retroactive application of those changes violates the defendant's due process rights under the Fourteenth Amendment to the United States Constitution and art. 10 of Massachusetts Declaration of Rights.

1. *Procedural background.* We recount the relevant procedural history, much of which is discussed in *Pielech I, supra*; *Opinion of the Justices*, 423 Mass. 1244 (1996); and *Pielech* v. *Massasoit Greyhound, Inc.*, 47 Mass. App. Ct. 322 (1999) (*Pielech II*).

a. *Before the 1997 amendment.* This case began when the two plaintiffs alleged that they were discriminated against after the defendant terminated their part-time jobs when they refused to work their regularly scheduled shift, which fell on Christmas Day of 1992. The plaintiffs claimed that they were devout Roman Catholics and their beliefs obligated them to refuse to work on Christmas Day. In their complaint, the plaintiffs alleged discrimination (G. L. c. 151B, § 4 [1A]), violation of the Massachusetts Equal Rights Act (G. L. c. 93, § 102), and intentional and negligent infliction of emotional distress. A Superior Court judge granted the defendant's cross motion for summary judgment on the issue of liability under G. L. c. 151B,

§ 4 (1A), because no tenet of Roman Catholic dogma required that the plaintiffs abstain from working on Christmas Day.

The plaintiffs appealed, and in *Pielech I*, this court held that G. L. c. 151B, § 4 (1A), violated the establishment clause because it protected an employee from being required to work in contravention of a sincerely held religious belief only if that belief was shared by others belonging to an organized church or sect. See *Opinion of the Justices, supra* at 1245. In response, the Legislature amended the statute in 1997, granting individuals protection from discrimination for their sincerely held religious beliefs, whether or not such beliefs are part of religious dogma.

Moreover, the Legislature made the 1997 statute retroactive. Section 3 of St. 1997, c. 2, states:

> "The provisions of section two of this act shall apply to all claims arising not earlier than three years before the effective date of this act which have not yet been filed, and to all other claims pending before the commission against discrimination or a court on the effective date of this act, including claims upon which final judgment or judgment after rescript has not entered or as to which a period to file an appeal, certiorari petition, petition for rehearing or similar motion has not expired on said effective date."

In 1996 (before the Legislature adopted the amended statute) an order adopted by the House of Representatives and submitted to the Justices asked, inter alia, whether the retroactive provision in the amendment violated the due process clause of the Fourteenth Amendment and arts. 1, 10, and 12 of the Massachusetts Declaration of Rights. The Justices declined to address the question, stating, "[T]he answer . . . will depend on the facts of each case." *Opinion of the Justices, supra* at 1247.

b. *After the 1997 amendment.* The day after the 1997 statute was enacted, "the plaintiffs initiated a separate action . . . in the Superior Court under G. L. c. 151B, § 4 (1A), as amended by St. 1997, c. 2, repeating the discrimination claims of their 1993 complaint." *Pielech II, supra* at 324.[2] In addition, inter

---

[2]The plaintiffs also filed, and the United States Supreme Court denied, a petition for certiorari. That part of the procedure is discussed in *Pielech* v.

alia, "the plaintiffs . . . on March 28, 1997, . . . fil[ed] an 'emergency' motion pursuant to Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974), in which they sought relief from the summary judgment dismissing their original complaint . . . [and] filed a motion to amend their original complaint by substituting the amended § 4 (1A) and adding a count under Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e (1994), accompanied by a 'First Amended Complaint' that repeated verbatim the counts under G. L. c. 93, § 102, and for intentional and negligent infliction of emotional distress contained in their original complaint. On April 25, 1997, the rule 60 (b) (6) motion was denied by the same Superior Court judge."[3] *Pielech II*, *supra* at 324.

The plaintiffs appealed. The Appeals Court reversed the motion judge's denial of the rule 60 (b) (6) motion as to the plaintiffs' claims under the 1997 statute only.[4] *Pielech II*, *supra* at 328. The Appeals Court did not decide the issue of the constitutionality of the 1997 statute. *Pielech II*, *supra* at 327-328.

After the motion judge denied the plaintiffs' motion to amend the complaint to add a Title VII claim and consolidated the two cases, the matter went to trial on the G. L. c. 151B, § 4 (1A), claim. At the close of evidence, the trial judge denied the defendant's motion for a directed verdict pursuant to Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974), on the ground that the retroactive application of the 1997 statute violated its due process rights. The jury returned a special verdict, finding that

*Massasoit Greyhound, Inc.*, 47 Mass. App. Ct. 322, 324 (1999) (*Pielech II*), and need not be repeated here.

[3]These motions followed the denial of the plaintiffs' petition for certiorari. See *Pielech II*, *supra*.

Three judges made rulings concerning the plaintiffs' action. We shall refer to the judge who ruled on the defendant's motion for judgment notwithstanding the verdict as the "trial judge." We shall use the term "motion judge" to refer to the judges who ruled on the plaintiffs' motion to amend their complaint and their motion pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974).

[4]Regarding the plaintiffs' other claims, the Appeals Court foreclosed the plaintiffs from pursuing their G. L. c. 93 and intentional infliction of emotional distress claims, but stated, "The plaintiffs' motion to amend their original complaint by adding a count under Title VII also appears to be duplicative of the c. 151B claim, but, in any event, the disposition of that motion is left to the Superior Court on remand." *Pielech II*, *supra* at 327.

the defendant had discriminated against the plaintiffs and that its refusal to accommodate the plaintiffs' religious beliefs was not because of an undue hardship. The jury awarded compensatory damages to both plaintiffs and punitive damages in the amount of one dollar each. The trial judge ruled on posttrial motions from both the plaintiffs and defendant, but the only posttrial motion relevant here is the defendant's motion for judgment notwithstanding the verdict. The trial judge denied that part of the defendant's motion concerning whether the retroactive application of the 1997 statute violated its due process rights.[5]

Both parties raise several issues on appeal.[6] However, because we conclude that the retroactive clause of the 1997 statute violates the defendant's due process rights, we need not address all of them.

2. *Discussion.* a. *Retroactivity of the 1997 statute.* "Where it appears that the Legislature intended an act to be retroactive, this intent should be given effect in so far as the Massachusetts and Federal Constitutions permit." *St. Germaine* v. *Pendergast,* 416 Mass. 698, 702 (1993), citing *Canton* v. *Bruno,* 361 Mass. 598, 606 (1972).

Only those retroactive statutes "which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional." *Leibovich* v. *Antonellis,* 410 Mass. 568, 577 (1991), quoting *American Mfrs. Mut. Ins. Co.* v. *Commis-*

---

[5]The trial judge's denial of the defendant's motion for judgment notwithstanding the verdict on the ground that the amended statute violates the establishment clause was not appealed.

[6]The plaintiffs argue that the motion judge erred in denying them leave to amend their complaint to add a Title VII claim, which we discuss, *infra.* They also argued that the trial judge erred in denying them punitive damages under the 1997 statute's retroactive provision, charging the jury and admitting irrelevant and prejudicial evidence (requiring a new trial on the award of punitive damages), and reducing the award of attorney's fees they requested. The plaintiffs also asked this court to award appellate attorney's fees and costs.

In addition to the argument that we address in this opinion, that the retroactive application of the 1997 statute violated its due process rights, the defendant argues that the trial judge erred in allowing the plaintiffs to recover prejudgment interest for the period prior to the enactment of the 1997 statute, and that the amount of attorney's fees awarded was excessive.

*sioner of Ins.*, 374 Mass. 181, 189-190 (1978).[7] See *St. Germaine* v. *Pendergast, supra* at 702-704. A statute is presumed to be constitutional and every rational presumption in favor of the statute's validity is made. *Id.*, and cases cited. The challenging party bears a heavy burden to demonstrate, beyond a reasonable doubt, that there are no conceivable grounds supporting its validity. *Id.* at 703, citing *Leibovich* v. *Antonellis, supra* at 576. A court is only to inquire whether the Legislature had the power to enact the statute and not whether the statute is wise or efficient. *St. Germaine* v. *Pendergast, supra* at 703, citing *Leibovich* v. *Antonellis, supra.*

As we noted above, the Legislature's enactment of the 1997 statute was in response to our decision in *Pielech I*. See *Opinion of the Justices, supra* at 1244-1245. In *Pielech I, supra* at 536-539, this court determined that the defendant did not violate the earlier version of the statute because it covered religious discrimination only if the religious belief or practice was required by a religion; it did not cover sincerely held religious beliefs. The court went on to hold, however, that that very feature was what rendered the statute unconstitutional. *Id.* at 540-542.

This case is similar to and governed by *St. Germaine* v. *Pendergast, supra*. St. Germaine was severely injured while working on the defendant's single-family home. *Id.* at 699-700. St. Germaine and his parents brought an action claiming, inter alia, that the defendant was liable for violating provisions of G. L. c. 143, § 51. *Id.* at 700. This court held that the relevant provisions of G. L. c. 143, § 51, did not cover a single-family home under construction. *Id.* at 700-701. In response, the Legislature enacted St. 1992, c. 66, and amended the statute, inserting language that covered the defendant's actions and made the 1992 statute retroactive. *Id.* at 701. The court held:

"The substantial effects the statute would have on [the

---

[7] *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 191 (1978), identified a three-prong test with which to analyze the reasonableness of a retroactive statute: the nature of the public interest, the nature of the rights affected retroactively, and the extent or scope of the statutory effect or impact. We acknowledge, but need not address, each argument the parties made concerning these factors.

defendant's] rights, holding his past actions to a new and significant obligation, offset any public interest there may be in providing retroactively for civil liability for violations of the State Building Code. We conclude that the retroactive application of St. 1992, c. 66, amending G. L. c. 143, § 51, to [the defendant] is unreasonable and violates art. 10. . . . [F]airness is the touchstone of due process and to hold [the defendant] liable to new obligations would offend fundamental fairness. A statute that retroactively imposes liability, without regard to fault, on a person who could reasonably have relied on the law at the time he elected to perform an act on which the new statutory liability is sought to be based violates art. 10, where no significant public interest is served by creating liability."

*Id.* at 703-704.

Like the statute in the *St. Germaine* case, the 1997 statute created a new substantial right. The statute as it existed in 1992 did not cover discrimination based on an individual's sincerely held religious beliefs, but the 1997 statute does. In this case, if the plaintiffs are allowed to use the retroactive section of the 1997 statute, the defendant will be held to an obligation that the law did not require of it at the time of the incident. At the time the plaintiffs were terminated, G. L. c. 151B, § 4 (1A), plainly stated that it protected only those individuals who were observing the requirements of an organized religion, and case law described that statutory requirement in similar terms. See, e.g., *Kolodziej* v. *Smith*, 412 Mass. 215, 220-221 (1992) (employer's requiring attendance at work-related nondenominational seminar that used religious references does not violate requirements of plaintiff's religion; G. L. c. 151B, § 4 [1A], covers required religious practices); *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 771-772 (1986) (no violation of G. L. c. 151B for discharge of employee who took unapproved two-month leave of absence to do missionary work for her church where religion did not mandate particular time period and place for missionary work). See also *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination*, 401 Mass. 566 (1988).

We conclude that the effect on the defendant's rights of the

liability newly created by the 1997 statute offsets any public interest there may be in providing a retroactive cause of action for discrimination based on sincerely held religious beliefs. *St. Germaine* v. *Pendergast, supra* at 703. Cf. *Leibovich* v. *Antonellis, supra* at 576-578 (upholding retroactive application of statute authorizing parent's right to bring claim for loss of consortium of child where statute did not alter standards for determining kind of behavior constituting negligence, but merely expanded class of potential plaintiffs who may recover for their injuries); *Keniston* v. *Assessors of Boston,* 380 Mass. 888, 904-906 (1980) (limiting application of retroactive tax legislation, where legislature's time period too oppressive); *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., supra* at 192-194 (upholding retroactive application of automobile insurance statute where legislation was emergency in nature to remedy substantial defect that could not have been perceived at time of previous law's enactment and Commissioner of Insurance had implied power of retroactive adjustment in intensely regulated industry). The issue is not whether there is an important public interest at stake in prohibiting discrimination against persons for their sincerely held religious beliefs — there obviously is such an interest. Rather, the issue is whether there is an important public interest in making that prohibition operate retroactively. Here, there is no indication that any significant number of persons will benefit from or need the retroactivity provision, and indeed, there is every indication that the retroactivity provision was enacted solely to benefit these plaintiffs. See generally *St. Germaine* v. *Pendergast, supra* at 701, 703-704. Cf. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., supra* at 192 (retroactive legislation to correct impact of insurance rates on large numbers of citizens).

In denying the part of the defendant's posttrial motion for a judgment notwithstanding the verdict concerning the retroactivity of the 1997 statute, the trial judge relied on Title VII. He reasoned, and the plaintiffs also argue, that because Title VII already prohibited discrimination against a person's sincerely held religious beliefs, and the defendant was subject to Title VII, the defendant could not have reasonably relied solely on Massachusetts law when it terminated the plaintiffs. We are unpersuaded by that argument. As discussed, the 1997 statute cre-

ated new legal liability on the defendant that did not exist when the plaintiffs' complaint arose. Although Title VII did include protection for sincerely held religious beliefs, the employer's burden to accommodate those religious beliefs under Title VII is not the same as the burden imposed by the 1997 statute. Indeed, Title VII relieves an employer of the obligation to accommodate when that accommodation would impose even a de minimis cost on the employer.[8] See, e.g., *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination,* 401 Mass. 566, 577 (1988) (affirming finding that employer did not incur more than de minimis cost to accommodate plaintiff's religious needs, in action under both Title VII and G. L. c. 151B, § 4 [1A]). By comparison, the undue hardship standard under G. L. c. 151B, § 4 (1A), includes "the inability of an employer to provide services which are required by and in compliance with all federal and state laws . . . or where the health or safety of the public would be unduly compromised by the absence of such employee or employees, or where the employee's presence is indispensable to the orderly transaction of business and his or her work cannot be performed by another employee of substantially similar qualifications during the period of absence, or where the employee's presence is needed to alleviate an emergency situation." Because the plaintiffs failed to raise Title VII in the original complaint, the jury did not consider the evidence in light of Title VII. We have no way of knowing what the jury's verdict would have been had they considered Title VII's undue hardship standard, but we do know that the standard is notably different from that imposed by G. L. c. 151B, § 4 (1A). As such, one cannot treat Title VII as a sufficiently precise equivalent to the 1997 statute to avoid due process problems with retroactivity.

b. *Denial of the plaintiffs' motion to amend.* The plaintiffs argue that we should reverse the motion judge's denial of their motion to amend their complaint to add a Title VII claim. They

---

[8]In fact, the plaintiffs' counsel objected to the trial judge's failure to instruct the jury that Title VII's "de minimis" standard for the accommodation required of the employer was not enough under the 1997 statute. At oral argument, the plaintiffs' counsel conceded that, if there was more than a de minimis cost to the defendant, Title VII would entitle the defendant to judgment in its favor.

argue that his decision was based on an error of law because he stated that the plaintiffs' claim was barred by the doctrine of res judicata. They claim that applying the doctrine of res judicata to a case that was reopened under rule 60 (b) (6) defeats the purpose of the rule. We disagree; it was not an error of law for the motion judge to deny the motion. The cases on which the plaintiffs rely to argue error of law are not apt. See, e.g., *Shaughnessy* v. *Board of Appeals of Lexington*, 357 Mass. 9, 12, 14 (1970) (error of law where judge denied motion because of his ruling that he lacked jurisdiction to hear case); *Cuzzi* v. *Board of Appeals of Medford*, 2 Mass. App. Ct. 887 (1974) (same); *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 1 Mass. App. Ct. 801 (1973) (judge erred in denying motion to amend on grounds that party failed to state cause of action).

The plaintiffs next argue that the motion judge had no basis to deny the motion, even if it was within his discretion. Again, we disagree. The Appeals Court reversed the judge's denial of the plaintiffs' rule 60 (b) (6) motion only as to the plaintiffs' claim under the 1997 statute. The Appeals Court left it to the motion judge to determine the disposition of the motion to amend. *Pielech II, supra* at 328-329. We cannot say that the motion judge abused his discretion in denying the plaintiffs' motion to amend their complaint to add a Title VII claim, especially given the procedural permutations of this case, and the lateness of the plaintiffs' motion. The motion judge held that denying the motion to amend was not unfair because the plaintiffs had had ample opportunity to raise a Title VII claim. Moreover, the motion judge, citing the Appeals Court's decision in *Pielech II*, stated that it was not unfair to deny the addition of an unpleaded theory (Title VII) where the plaintiffs' two other claims, which were pleaded, were foreclosed because they could have been the subject of an appeal after *Pielech I*.[9] The motion judge also stated that the other claims "passed into finality" when the United States Supreme Court denied the plaintiffs' petition for certiorari. The decision to grant a motion

---

[9]This court did not address the emotional distress claim and noted that the plaintiffs' treatment of the equal rights issue (G. L. c. 93, § 102) was insufficient appellate argument. *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 542 (1996), cert. denied, 520 U.S. 1131 (1997).

to amend falls within the motion judge's broad discretion, *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 72 (1992), and we see no abuse of discretion.

3. *Conclusion.* For the reasons stated above, we conclude that a retroactive application of the 1997 statute would violate the defendant's due process rights under art. 10. Accordingly, we affirm the allowance of the defendant's motion for judgment notwithstanding the verdict with respect to the awarding of punitive damages and reverse the denial of the motion with respect to the issue of the retroactive application of the amended statute. We vacate the judgment for the plaintiffs and direct that judgment be entered for the defendant. We affirm the motion judge's denial of the plaintiffs' motion to amend their complaint.

*So ordered.*