Sosman, J.
Plaintiffs Scott and Susan Gibson have brought the present action complaining of personal injuries sustained while Scott Gibson, an employee of third-party defendant FDN Associates, Inc. (“FDN”), was dismantling FDN staging on premises owned by defendant John and Julia Tweed. The Tweeds have moved for summary judgment on all claims. For the following reasons, defendants’ motion is ALLOWED.
Facts
On October 30, 1992, the Tweeds entered into a Residential Contracting Agreement with FDN for the construction of an addition to their home in Sherborn. In that Agreement, FDN was identified as the "Contractor” and the Tweeds were identified as “Owner.” The Agreement provided that FDN would complete all work called for in a set of drawings and the Tweeds would be obligated for progress payments and a final payment upon completion of all work. FDN retained the right to subcontract any part or all of the work to be performed. With respect to permits, the Agreement provided (¶7.18) that “Contractor [FDN] shall secure and pay for the building permit and for all other *268 permits and governmental fees, licenses and inspections necessary for the proper execution and completion of the Work."
Pursuant to the provision requiring FDN to obtain all necessary permits, FDN President Frederick Nastri submitted an application for building permit on November 2, 1992. The application was filled out by Nastri, indicating that the owner of the property was John Tweed and that FDN was the builder. Nastri signed the application. The signature line on the form instructed the applicant to indicate whether he was the “Builder” or the “Owner.” Nastri circled the option indicating that he was the “Builder.” Finally, pursuant to the Agreement, FDN paid the fee for the building permit. The Tweeds did not fill out any portion of the application, sign the application or pay for the issuance of the permit. The permit was issued by the Building inspector for the Town of Sherborn on November 30, 1992, certifying that “John & Julia Tweed & FDN has [sic] permission to construct] an addition” to the building located at 122 Farm Road in Sherborn.
During the construction of the addition, FDN employees erected some staging at the site. The staging itself was owned by FDN. On February 17, 1993, plaintiff Scott Gibson, a carpenter employed by FDN, was in the process of dismantling FDN’s staging when a sidewall bracket let go, causing Gibson to fall. According to Gibson, a securing nut on the back of the bracket had been removed a few days earlier to be used on other scaffolding at the project. The Tweeds did not erect the staging on which Gibson was injured, remove the securing nut, or play any role in Gibson’s dismantling of the staging.
Discussion
I. Negligence
Plaintiffs contend that the Tweeds themselves were the “general contractor” for their construction project and that they are therefore liable for the negligence of FDN, which plaintiffs refer to as a “subcontractor.”[1] The Tweeds (and FDN) contend that FDN was the general contractor, acting as independent contractor, and that the Tweeds did not retain control of any part of the work.
“An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other’s right to control with respect to his physical conduct in the performance of the undertaking.” Restatement (Second) Agency, §2(3). “If the person doing the work is responsible only for the performance of what he agrees to do, in the way in which he agrees to do it, and is not subject to direction and control as to every detail of the work, he is an independent contractor.” McDermott’s Case, 283 Mass. 74, 76 (1933). See also Cheschi v. Boston Edison Co., 39 Mass.App.Ct. 133, 137 n.5 (1995).
One who employs an independent contractor is not ordinarily liable for the negligence of that independent contractor. Vertentes v. Barletta Co., 392 Mass. 165, 168 (1984). However, to the extent that the employer of an independent contractor does retain the right to control any aspect of the work, he must exercise that control with reasonable care for the safety of others. Corsetti v. Stone Co., 396 Mass. 1, 9-10 (1985).
In the present case, the written agreement between FDN and the Tweeds made FDN the general contractor on the site and clearly described the relationship as that of independent contractor. FDN was to complete the work in accordance with contract drawings on an agreed upon schedule, and the Tweeds were to pay for that work as it progressed. The Tweeds did not retain control to supervise the work itself. The President of FDN has testified that, during the performance of the Agreement, the Tweeds did not assert control over FDN’s performance of the work. He testified that FDN controlled all the work; that FDN hired, scheduled and supervised all subcontractors; and that FDN was responsible for supervising and ensuring safety at the job site. His testimony confirmed that the Tweeds did not have these duties under the contract and that they did not undertake those duties during the performance of the contract.[2]
Plaintiffs have not come forward with any evidence to refute either the clear terms of the written Agreement between FDN and the Tweeds or the testimony of FDN’s President. Their opposition to the Tweeds’ motion merely states the conclusion, without citation to any evidence, that the Tweeds “acted as General Contractor” and “retained control over certain aspects of the construction sufficient to allow recovery against them.” Such unsupported and conclusory assertions are not sufficient to defeat a motion for summary judgment.
Plaintiffs also argue that scaffolding work is “inherently dangerous,” thus making the Tweeds liable for the actions of an independent contractor performing that “inherently dangerous” work. See Herrick v. City of Springfield, 288 Mass. 212, 216-17 (1934). Cases of “inherently dangerous” activities include such things as blasting [McConnon v. Charles H. Hodgate Co., 282 Mass. 584 (1933), burning timber land (Herrick, supra), and use of poisonous materials (Pannella v. Reilly, 304 Mass. 172 (1939) and Ferguson v. Ashkenazy, 307 Mass. 197 (1940)). The erection and disassembly of ordinary scaffolding for single-family home construction is not a form of “inherently dangerous” work. See Regan v. Superb Theatre, Inc., 220 Mass. 259 (1915) (theater not liable for independent contractor’s failure to secure scaffolding used to paint marquee).
II. G.L.c. 143, §51
Plaintiffs also claim that the Tweeds are liable pursuant to G.L.c. 143, §51, which (at the time of these events) contained the following provision:
Any person who obtains a building permit pursuant to the state building code to erect, construct, or *269 demolish a building or structure shall be liable to any worker or other person for all injuries and damages that result from a failure to provide a safe workplace or caused by a violation of the state building code or other codes, by-laws, rules and regulations applicable to the construction site.
St. 1992, c. 66. Defendants contend that, pursuant to their Agreement, it was FDN that “obtained” the building permit and that the statute does not impose liability on them. Plaintiffs argue that, although FDN was the entity that actually went and got the permit, it did so as agent for the Tweeds and that the Tweeds therefore also “obtained” the permit.
Under plaintiffs’ proposed interpretation, the statute would apply to any owner of property undergoing construction pursuant to a building permit, without regard to the identity of the person or entity who actually applied for and got the permit. By definition, a contractor who goes to pull a permit must identify both the property in question and its owner and, in that sense, the contractor is always obtaining the permit in the name of and on behalf of the properly owner. If the legislature wished to impose this form of strict liability on any person whose property was undergoing construction or demolition, it could have said so directly without reference to the “person who obtains a permit.” Imposition of strict liability on every home owner for any contractor’s failure to comply with any code, by-law, rule or regulation would represent a dramatic departure from preexisting tort law pertaining to independent contractors. Absent clear indication that that is what the legislature intended, this court will not interpret the term “any person who obtains a permit” to include owners who have delegated the task of getting the permit (and doing the work) to an independent contractor. The more straightforward reading, which the court adopts, imposes liabiliiy only on those persons who actually get the permit.
This interpretation is buttressed by the rather curious history of this now-repealed provision in §51. Prior to the enactment of St. 1992, c. 66, the statute read as follows:
The owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any of said provisions.
G.L.c. 143, §51.
In St. Germaine v. Pendergast, 411 Mass. 615, 618-19 (1992) (“St. Germaine (I)"), the Supreme Judicial Court held that this version of the statute did not apply to a single-family home under construction. In that case, plaintiff St. Germaine had been seriously injured while constructing a house owned by defendant Pendergast. On November 18, 1988, Pendergast had filed his own application for building permit and a homeowner license exemption, which allowed him to construct his own home without hiring a general contractor or licensed construction supervisor. Pendergast had then hired various subcontractors for the project, including the company that employed St. Germaine. On June 15, 1989, St. Germaine was injured when his crew lost control of a wall as it was being lifted to the second story of the house. In his initial suit against Pendergast, St. Germaine contended that Pendergast, as the “owner” of a “building,” was liable pursuant to G.L.c. 143, §51. Pendergast successfully moved for summary judgment as to that claim, and the jury found in favor of Pendergast on the companion common law negligence claim.
The Supreme Judicial Court affirmed. Noting that the statute used the term “building” at the end of a list of specific types of structures that bore no relation to a single-family residence, and that the definition of “building” in G.L.c. 143, §1 referred to structures with a “roof,” the Court decided that §51 did not apply to a single-family home under construction. The Court rendered its decision affirming the judgment in favor of Pendergast on January 14, 1992.
On June 12, 1992, three days before the statute of limitations would have barred St. Germaine’s claim, the legislature enacted St. 1992, c. 66 inserting the provision imposing liability on “any person who obtains a permit pursuant to the state building code to erect, construct, or demolish a building or structure.” The legislature declared the act to be an emergency law and made it applicable to all causes of action arising on or after November 1, 1988, a date just prior to Pendergast’s November 18, 1988 application for building permit. Later that day on June 12, 1992, within hours of the passage of St. 1992, c. 66, St. Germaine filed another suit against Pendergast based solely on the amended version of G.L.c. 143, §51.
The court dismissed St. Germaine’s second suit, and St. Germaine again appealed. The Supreme Judicial Court held that retroactive application of the amendments to §51 would violate art. 10 of the Declaration of Rights of the Massachusetts Constitution. St. Germaine v. Pendergast, 416 Mass. 698, 702-04 (1993) (“St. Germaine (II)”). The Court noted that the amended version of the statute represented a “stark contrast” to the law existing at the time of the application for permit and at the time of the accident, as the amended version would impose liabiliiy without regard to fault. Id. at 703, 704. Retroactive application of such a dramatically new obligation “would offend fundamental fairness.” Id. at 704. The Court’s decision refusing to apply St. 1992, c. 66 retroactively to St. Germaine’s claim against Pendergast was rendered on December 29, 1993.
Immediately following the Court’s decision, the legislature again amended G.L.c. 143, §51 deleting the *270 provision imposing liability on “any person who obtains a permit.” St. 1993, c. 495, §35. That amendment was approved on January 14, 1994, thus reinstating the earlier version of §51.
The chronology and timing of events surrounding the passage of St. 1992, c. 66 and St. 1993, c. 495, §35, and their relation to the conduct of St. Germaine’s lawsuits against Pendergast, strongly suggest that St. 1992, c. 66 was prompted by a desire to assist St. Germaine’s case. Once it became apparent, as a result of the ruling in St. Germaine (II), that the legislature could not impose liability retroactively on Pendergast, the legislature promptly reinstated the former version of the statute.
The present case, where the building permit was obtained on November 30, 1992 and the accident occurred on February 17, 1993, falls within the eighteen-month period that the amended version of §51 was in effect. During those eighteen months, §51 did apply to construction of a single-family home. St Germaine (II), 416 Mass. at 702. Plaintiffs contend that, where there is no problem of retroactive application, St. Germaine (II) supports their §51 claim against the Tweeds. Unlike the Tweeds, however, defendant Pendergast in St. Germaine (II) had obtained his building permit himself. The St. Germaine (II) decision did not address the question of whether the term “any person who obtains a permit” included property owners who had a general contractor obtain the permit.
However, the history of the St. Germaine cases in relation to the legislative enactments provides a possible explanation for the legislature’s decision to impose liability on the person “who obtains a permit.” Where Pendergast had obtained his own permit, this amendment to §51 would (but for the problem of retroactive application) cover St. Germaine’s claim against Pendergast without sweeping into its ambit every home owner who relied upon an independent general contractor to build or renovate his home. The amended version of §51 was designed to impose liability on those owners who, like Pendergast, undertook their own construction without hiring any general contractor. It was not the legislature’s intent to make every home owner strictly liable for the conduct of their independent general contractors.
ORDER
For the foregoing reasons, defendants’ motion for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of defendants on all counts of plaintiffs’ complaint.

 Plaintiffs do not have any evidence that the Tweeds themselves committed any negligent act. Their negligence theory against the Tweeds is premised solely on the assertion that the Tweeds are vicariously liable for the negligence of FDN.

 The Tweeds and FDN did execute various change orders during the course of the work. Alterations and modifications to the description of what was to be included in the completed work do not amount to control or supervision of the ongoing performance of the work.