Hely, J.
I. INTRODUCTION
G.L.c. 40, sec. 57, establishes a procedure through which a city or town may deny a building permit or other local license if the party seeking the permit or license has “neglected or refused to pay” any local taxes or fees for twelve months or more. Under the statute, a permit for a tax delinquent person or entity may be denied even if the unpaid taxes are due on property that is not the subject of the permit. A permit may also be denied to any person seeking to conduct an activity on property for which the owner has not paid local taxes or fees for twelve months or more. The Town of Hanover has adopted in a by-law the provisions of this statute.
The plaintiffs’ first amended complaint seeks declaratory relief against the Town of Hanover declaring that the statute is unconstitutional because its terms are too vague and because its procedures deprive permit applicants of due process of law. A declaratory judgment on the statute is appropriate, but not the judgment the plaintiffs ask for. The statute is not unconstitutionally vague. Its procedures provide adequate due process protections to permit applicants. The plaintiffs are left to a judicial hearing on their claim for limited judicial review in the nature of cer-tiorari. The plaintiffs are entitled to this limited form *5 of judicial review because they have exhausted their administrative remedies.
The issues have come to the court in this way. The plaintiffs sought a preliminary injunction against enforcement of the statute. The Town moved to dismiss. The motion for a preliminary injunction was denied. The court notified the parties it would treat the motion to dismiss as a motion for summary judgment. The parties submitted appropriate affidavits and related documents. The court has considered the affidavits of Richard D. Matthews (2/5/99 and 6/9/99), David Bonney and Robert Haley, the request for injunctive relief and first amended complaint with their attachments, and the motions and memoranda and their attached documents. The facts material to the motion for summary judgment are undisputed with respect to two issues: (1) the plaintiffs’ claim that the statute is unconstitutional; and (2) the Town’s claim that certio-rari review is impermissible because the plaintiffs have not exhausted their administrative remedies. The undisputed material facts are summarized below.
II. UNDISPUTED FACTS
The plaintiff R.D. Matthews Construction Co., Inc. is a builder and subdivision developer. The plaintiff Richard D. Matthews is president of this corporation. Mr. Matthews is also a trustee of New Heritage Realty Trust (referred to in some of the papers as New Heritage Trust). R.D. Matthews Construction Co., Inc. and New Heritage Realty Trust each owned a number of lots in Hanover that were considered unbuildable due to wetlands restrictions. Mr. Matthews, acting on behalf of R.D. Matthews Construction Co., Inc. and New Heritage Realty Trust, applied unsuccessfully for a real estate tax abatement on these lots. In 1991, Mr. Matthews, again acting on behalf of both R.D. Matthews Construction Co., Inc. and New Heritage Realty Trust, offered eighteen of these lots as a gift to the Hanover Conservation Commission. The Commission declined the present.
On June 29, 1993, Dillagas Foundation was formed in the state of Delaware. The next day, R.D. Matthews Construction Co., Inc. and New Heritage Trust sold to Dillagas Foundation the lots that the Conservation Commission had spurned as a gift. All fiscal year 1993 real estate taxes on the transferred lots were paid at the time of the transfers. At some point the 1994 taxes were also paid. By early 1999, however, the real estate taxes due on these Dillagas Foundation lots had been unpaid for twelve months or more.[1]
The plaintiffs’ first amended complaint challenges the Town’s use of G.L.c. 40, sec. 57, to deny building or occupancy permits to the plaintiffs for five properties that are not owned by Dillagas Foundation. These five properties are:
-100 Old Schoolhouse Lane owned by either R.D. Matthews Construction Co., Inc. or by Richard D. Matthews in his own name (Matthews aff. 2/5/99); -24 Rockland Street, a commercial office and warehouse building, owned by Richard D. Matthews;
-a Larchmont Lane vacant lot owned by Orchard Knoll, L.L.C.
-25 Brisco’s Plain; and
-20 Brisco’s Plain.[2]
On May 15, 1998, the town treasurer, acting under the authority of G.L.c. 40, sec. 57, sent to the building inspector a list of delinquent tax title properties including the lots owned by Dillagas Foundation. The town treasurer informed the building inspector in his May 15, 1998, memorandum that Dillagas Foundation and R.D. Matthews’s Construction Co., Inc. should be considered the same entity. On January 5, 1999, the treasurer sent a letter to the building inspector requesting that he not issue any permits to R.D. Matthews Construction Co., Inc., Richard D. Matthews, New Heritage Trust, or Dillagas Foundation until a hearing is held under G.L.c. 40, sec. 57. On January 15, 1999, the treasurer sent the building inspector an updated list of delinquent tax title properties. This list again included the Dillagas properties. In addition to Dillagas Foundation, the treasurer’s list named R.D. Matthews Construction Co., Inc, Richard D. Matthews and New Heritage Realty Trust as parties responsible for the taxes on the Dillagas lots. The plaintiffs do not dispute that the real estate taxes on the Dillagas lots had not been paid for twelve months or more.
Richard D. Matthews applied for building or occupancy permits or transfers of permits for 100 Old Schoolhouse Lane, 24 Rockland Street, 25 Brisco’s Plain and 20 Brisco’s Plain. He may also have applied for a permit or transfer for the Larchmont Lane vacant lot, but this is not clear in the summary judgment materials. The building inspector gave Mr. Matthews written notice that a hearing under G.L.c. 40, sec. 57, on the permit and transfer applications would be held on February 22, 1999, regarding 100 Old Schoolhouse Lane, 24 Rockland Street, and 25 Brisco’s Plain.
The building inspector conducted the hearing on February 22, 1999, and took testimony and other evidence. An attorney representing Richard D. Matthews, R.D. Matthews Construction Co., Inc., New Heritage Trust and Dillagas Foundation participated in the hearing. Richard D. Matthews did not attend. There was evidence at the hearing concerning the conveyance of the lots to Dillagas Foundation. There was evidence that Richard D. Matthews’ daughter is a principal of Dillagas and that Mr. Matthews or R.D. Matthews Construction Co., Inc. had paid some of the earlier taxes that had been due on the Dillagas Foundation lots.
On June 1, 1999, the building inspector issued a written decision under G.L.c. 40, sec. 57, denying the applications for permits and transfers of permits and revoking existing permits for three specified proper *6 ties: 100 Old Schoolhouse Lane, 24 Rockland Street, and 25 Brisco’s Plain. The written decision does not refer to any other properties.
In his written decision, the building inspector found that there was a commonality of identity and interest in Richard D. Matthews, R.D. Matthews Construction Co., Inc., New Heritage Trust, and Dillagas Foundation. The building inspector found that there were unpaid real estate taxes and related charges on the land conveyed by R.D. Matthews Construction Co., Inc. and New Heritage Trust to Dillagas Foundation. The building inspector found that Richard D. Matthews, R.D. Matthews Construction Co., Inc. New Heritage Trust, and Dillagas Foundation were the parties responsible for the unpaid taxes and related charges on the Dillagas Foundation lots.
After the building inspector’s decision, the plaintiffs did not apply to the board of selectmen for a waiver under G.L.c. 40, sec. 57(d).
III. THE VAGUENESS CLAIM
The Town contends that the court should not reach the constitutionality issue because the plaintiffs have not exhausted their administrative remedies by appealing to the board of selectmen under Section 57(d). As the plaintiffs correctly point out, however, the exhaustion doctrine does necessarily bar a declaratory judgment on the constitutionality of the statute. A declaratory judgment is appropriate in this case because the complaint alleges that the government action is depriving the plaintiffs of a property interest under an unconstitutional statute and because the issue of the constitutional validity of the statute does not depend on any disputed fact issues. Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 268 n. 4 (1992); Samel v. City of Pittsfield Licensing Board, 377 Mass. 908 (1978); see G.L.c. 231A, sec. 2 and 3. The exhaustion defense will be revisited in Part V below.[3]
The plaintiffs confront far more imposing obstacles in seeking a judicial declaration that an act of the democratically elected Legislature cannot be enforced. A statute “is presumed to be constitutional.” St. Germaine v. Pendergast, 416 Mass. 698, 703 (1993). The challenging party “must demonstrate beyond a reasonable doubt that there are no conceivable grounds supporting its validity.” Id. The challenging party “bears a heavy burden and every rational presumption in favor of the statute’s validity is made .’’Id.; Commonwealth v. Caldwell, 25 Mass.App.Ct. 95, 97 (1987); Commonwealth v. Fossa, 31 Mass.App.Ct. 916 (1991). The court is “only to inquire into whether the Legislature had the power to enact the statute and not whether the statute is wise or efficient.” St. Germaine, supra; see art. 30, Massachusetts Constitution.
Vague laws violate constitutional due process rights “because individuals do not receive fair notice of the conduct proscribed by a statute, . . . and because vague laws that do not limit the exercise of discretion by officials engender the possibility of arbitrary and discriminatory enforcement.” Caswell v. Licensing Commission for Brockton, 387 Mass. 864, 873 (1983). A law is not unconstitutionally vague, however, if it requires a person “to conform his conduct to an imprecise but comprehensible normative standard so that. . . [persons] of common intelligence will know its meaning.” Commonwealth v. Orlando, 371 Mass. 732, 734 (1977).
The statute at issue enables cities and towns to deny local permits on the basis of a failure to pay local taxes or fees by the party seeking the permit. Through G.L.c. 40, sec. 57, the Legislature has extended to cities and towns an additional method for civilly enforcing local tax obligations. The statute does not affect First Amendment freedoms and it does not attempt to define or punish criminal conduct. The statute therefore “need not contain criteria as precise and definite as laws which affect First Amendment freedoms” or define or punish criminal acts. Caswell v. Licensing Commission for Brockton, supra.
Considering G.L.c. 40, sec. 57, as a whole, the statutory language is sufficiently clear to survive the claim of unconstitutional vagueness. The statute may be applied to a “person, corporation or business enterprise” who has “neglected or refused to pay” taxes or fees for twelve months or more. In the context of real estate taxes, the statutory phrase “neglected or refused to pay" necessarily implies that the party subjected to a permit denial must be a person or entity with a duty to pay the taxes based either on legal title or on some significant ownership interest in a tax delinquent property. The use of the terms “owner” and “owned” in Section 57’s first paragraph and in Subsections (b) and (d) further suggests that the permit withholding must be based on some significant ownership interest if not legal title.
The Legislature in this statute did not confine the permit denial procedure solely to recorded title holders or persons to whom real estate taxes may be assessed under G.L.c. 59, sec. 11. By its terms, the statute may be applied to an intentionally broad range of persons and entities. This reflects a legislative awareness that there is a wide variety of business, trust and personal entities that own or have substantial financial interests in land without appearing as recorded title holders. Individuals and businesses may resort to complex legal mechanisms and layers for owning or controlling land, sometimes for the very purpose of concealing their interests and evading tax responsibilities. The Legislature could appropriately consider the difficulties confronting towns and cities in actually collecting real estate taxes from the parties with the controlling financial interests. The fact that the statute is not strictly confined to persons with a recorded title to the land is a matter of legislative policy choice, not unconstitutional vagueness.
This statute, like others, does not attempt to give an exact description of every conceivable fact situation *7 where a person might be subjected to a permit denial based on evidence of the person’s financial interest in tax delinquent property. Constitutional due process principles do not subject the Legislature to such impossible drafting burdens. Alcoholic beverage licensing laws and regulations, for example, often commit to the agency difficult fact issues on whether various persons have controlling interests in the licensed business. See, e.g., Number Three Lounge, Inc. v. Alcoholic Beverages Control Commission, 7 Mass.App.Ct. 301, 311 (1979) (in determining whether the license holder is a straw for the parties with the controlling interest, the agency may look to “the substance of the ownership involved apart from the form employed to hold title”).
Under G.L.c. 40, sec. 57, if the permit applicant asserts that he has no significant ownership interest in the tax delinquent property, he can present his evidence and arguments at the licensing authority hearing. Although the statute “does not list particular standards for the local authorities, these authorities may not act arbitrarily or capriciously.” Caswell v. Licensing Commission for Brockton, supra, 387 Mass. at 875. Judicial review in the nature of certiorari is available to the applicant to correct errors of law and decisions that are arbitrary, capricious or not supported by evidence. G.L.c. 249, sec. 4.
In some cases, difficult questions may arise on the nature and extent of the permit applicant’s ownership interest, but this does not make the statute unconstitutionally vague under due process standards. The statute permissibly confers upon the licensing authorities “ ‘a quasi judicial authority to determine the facts and to pass upon the application in each instance under the serious sense of responsibility imposed upon them by their official positions and the delicate character of the duty entrusted to them.’ ” Caswell v. Licensing Commission for Brockton, supra.
IV. DUE PROCESS PROCEDURAL PROTECTIONS
The plaintiffs’ claim that the statute deprives them of procedural due process protections may be addressed more briefly. Under the Fourteenth Amendment to the United States Constitution, a state may not deny a person of a property interest without due process of law. Generally this means that the state or local regulatory authority must provide the property owner with the procedural protections of notice and the opportunity to be heard. Sniadach v. Family Finance Corp. 395 U.S. 337 (1969); Parratt v. Taylor, 451 U. S. 527, 538, 540 (1981); Chongris v. Board of Appeals of the Town of Andover, 811 F. 2d 36, 40-42 , (1st Cir. 1987), cert. denied, 483 U.S. 1021 (1987); D. A. Randall & D. E. Franklin, Municipal Law and Practice, sec. 401, 448 (1993 and Supp. 1997).[4]
G.L.c. 40, sec. 57, satisfies the standards summarized in the above authorities. The statute requires written notice to the party whose permit or license might be withheld. A permit or license cannot be withheld unless the taxes or fees have been unpaid for twelve months or more. The statute requires a hearing no sooner than fourteen days after the notice. While the tax collector’s preparation of the tax delinquent list is not itself subject to notice and hearing, inclusion on the list does not deprive the permit applicant from being heard fully at the licensing authority hearing on whether he is a person or entity who has “neglected or refused” to pay local taxes or fees for twelve months or more. As noted earlier, certiorari review is also available to an applicant who has been denied a permit by the licensing authority under the Section 57 procedure.
The plaintiffs have cited no authority for the claim that constitutional due process requires a specific statutory time deadline for the issuance the licensing authority’s decision. The law’s delay may drive princes to ask whether to be or not to be. On egregious facts, delay could even amount to a de facto permit denial. The United States Constitution, however, does not require a built-in statutory deadline.
V. CERTIORARI AND EXHAUSTION
Apart from their constitutional claims, the plaintiffs in Counts III through VIII of the first amended complaint seek review in the nature of certiorari under G.L.c. 249, sec. 4. This limited form of judicial review is available where a licensing agency’s decision is not subject to any other form of review. Bielawski v. Personnel Administrator of Division of Personnel Administration, 422 Mass. 459, 464 (1996); see Bermant v. Board of Selectmen of Belchertown, 425 Mass. 400, 403 (1997). Certiorari review “is confined to the record and is for the purpose of correcting legal error. . .” Bielawski, supra. The reviewing court “need only inquire whether the . . . [agency] decision was ‘legally tenable and supported by substantial evidence on the record as a whole.’ ” Id.
The Town has appropriately raised the issue of whether the plaintiffs have exhausted their administrative remedies. Judicial review, even limited certio-rari review, is not permitted unless the aggrieved party has exhausted the available administrative remedies. Carney v. Springfield, 403 Mass. 604, 605 (1988); Reidy v. Acting Director of Civil Service, 354 Mass. 760 (1968); see Stowe v. Bologna, 415 Mass. 20, 22 (1993). This is an important constraint on judicial powers. The Town contends that G.L.c. 40, sec. 57(d), gives disappointed permit applicants a right of appeal to the board of selectmen and that the plaintiffs have failed to exercise this right.
The exhaustion issue turns out to be not so clear-cut. Section 57(d) provides that the board of selectmen may “waive” a permit denial or revocation if it finds that the owner of property with unpaid taxes, its officers or stockholders, or members of the property owner’s immediate family have no “direct or indirect business interest” in the business or activity con *8 ducted on the property. This is not a right of appeal available to all permit applicants who have been turned down by the licensing authority under Section 57. The board of selectmen’s waiver powers do not include the power to review the pivotal question of whether the applicant is a person or entity who has “neglected or refused” to pay local taxes or fees. A waiver is available only in those cases where the applicant can show that the tax delinquent property owner, its stockholders or officers, or his immediate family members have no business interest in the business or activity conducted on the property.
An example serves to illustrate the narrowness of the Section 57(d) waiver procedure. Let us assume that a lot-owner named Joan has applied for a building permit on her only lot and that all her local taxes and fees have been fully paid. Her brother John owns an entirely separate lot in town and has not paid his real estate taxes for more than a year. If the building inspector denies Joan’s permit application under Section 57, Joan will have no right of appeal to the board of selectmen under Section 57(d). The selectmen would have no authority to waive the denial of Joan’s permit. By her family status as the sister of a tax delinquent, Joan is automatically ineligible for a Section 57(d) waiver.
In the case at bar at least two of the plaintiffs, Richard D. Matthews and R.D. Matthews Construction Co., Inc., were not eligible for the Section 57(d) waiver procedure because of an immediate family tie with Dillagas Foundation, the delinquent taxpayer. The plaintiffs informed the court at the July 9, 1999, preliminary injunction hearing that Dillagas Foundation is owned by Mr. Matthews’ daughter. There was also evidence of this at the licensing authority hearing.
Section 57(d) is a narrow waiver procedure available only for a limited class of applicants. It is not an appeal available to any party who seeks to challenge a licensing authority’s decision that he is a property owner who has neglected or refused to pay taxes. For this reason, the court will not require completion of the Section 57(d) waiver procedure as a prerequisite to certiorari review in every case. The Section 57(d) procedure will be required only where the applicant’s claim on review is that the tax delinquent property owner, its officers or stockholders, or his immediate family members have no business interest in the activity or business conducted on the property.
In not requiring the plaintiffs in this case to first use the Section 57(d) waiver procedure, the court makes no suggestion on whether there is merit to the plaintiffs’ certiorari counts. The court only concludes that certiorari review in this case is not barred by the exhaustion principle.[5]
VI. ORDER
On Counts I and II of the first amended complaint, a declaratory judgment will enter declaring as follows: G.L.c. 40, sec. 57, is not unconstitutionally vague, and the procedures set forth in the statute are sufficient under constitutional due process of law requirements.
Counts III through VIII are sufficient to state claims for certiorari review. The court will conduct the certio-rari hearing on September 16, 1999, at 2:00 p.m.
The plaintiffs must file and serve by September 14, 1999, one or more personal knowledge affidavits specifically identifying: (1) each property named in the first amended complaint for which a permit has been denied to a plaintiff under G.L.c. 40, sec. 57, and that is presently owned by one of the plaintiffs; (2) the present owner of each such property; (3) the nature of the permit applied for and the date and method of each such denial; and (4) a copy of any relevant permit application or other relevant record, exhibit or paper that the plaintiffs submitted to the Town in connection with such permit denial. The court will only review permit denials to the plaintiffs by the Town under the authority of G.L.c. 40, sec. 57, for properties that are named in the first amended complaint, currently owned by a plaintiff, and identified in the above affidavit. The court will not review permit issues, if any, that have become moot because of a subsequent issuance of the permit or the transfer of the property to a person or entity who is not a plaintiff.
The Town must file and serve by September 14, 1999: (1) an answer; (2) a list and a copy of the exhibits and any other documents or papers that were considered by the building inspector at the February 22,1999, hearing; and (3) one complete copy of the notes and any other available record of the February 22, 1999, hearing.
Any other document, paper or record that a party considers pertinent to certiorari review may be offered by the party at the hearing.

The State of Delaware Certificate of Incorporation and other corporation documents name the corporation as Dillagas Foundation. The deeds of the lots from New Heritage Trust and R.D. Matthews Construction Co. Inc. are signed by Richard D. Matthews as a trustee of the trust or as president and treasurer of the corporation. The deeds refer to the grantee as Dilligas Foundation. The court assumes for now that this was an unintentional misspelling by the grantor.
None of the parties disputes the authenticity of the corporate registration papers, letters and other documents submitted on the motion.

The first amended complaint refers to an initial denial of building or occupancy permits for 25 Brisco’s Plain and 20 Brisco's Plain. The first amended complaint states that the permits were later issued after R.D. Matthews Construction Co., Inc. conveyed these two lots to Orchard Knoll, L.L.C. and assigned to Property Solutions, Inc. its note and mortgage on 20 Brisco’s Plain. Mr. Bonney’s affidavit confirms this. The plaintiffs Request for Injunctive Relief and Mr. Bonney’s affidavit also state that the Town issued an occupancy permit for 100 Old Schoolhouse Lane after the title was conveyed and a new application was filed. It is not clear whether the plaintiffs have sufficiently alleged a deprivation of property rights and an actual controversy regarding these lots since the permits have already been issued. The court will assume for the present that the declaratory judgment portion of the complaint is sufficient for these lots.

The Town rightly points out that the court should not address a statute’s constitutionality if the plaintiffs have not *9 notified the Attorney General to give him the opportunity to be heard. G.L.c. 231A, sec. 8. Plaintiffs counsel represented at the summary judgment hearing that he gave notice to the Attorney General. The Attorney General has not sought to intervene. Normally the plaintiff should be required file an affidavit that he has sent timely written notice with a copy of the complaint to the Attorney General.

As in prior cases, the comprehensive, reliable treatise of Messrs. Randall and Franklin has assisted the court on the municipal law issues throughout this decision.

The Town has submitted to the court a copy of a "Delaware Phone-In Incorporation Form," apparently prepared by a business that helps clients set up Delaware corporations. This form lists Richard Matthews as the client applicant. Possible fact disputes about the ownership or control of Dillagas Foundation are not material to the declaratory judgment decision regarding the constitutionality of the statute. In this summary judgment decision, the court expressly declines to review the fact issues underlying the Town’s decision to deny the permits.