RACHEL A. BIRD ANDERSON *vs.* BNY MELLON, N.A., trustee,[1]
& others.[2]

Norfolk. May 7, 2012. - August 28, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Devise and Legacy,* Adopted child. *Trust,* Adopted child, Construction. *Will,* Construction, Omitted issue. *Statute,* Retroactive application. *Due Process of Law,* Retroactive application of statute.

Discussion of the history of amendments to G. L. c. 210, § 8, which prescribes a rule of construction for certain types of instruments relating to inheritance. [304-307]

This court concluded that retroactive application of a 2009 amendment to G. L. c. 210, § 8, which redefined the term "child" or its equivalent to include adopted children unless a contrary intent plainly appeared in an instrument relating to inheritance, was unconstitutional as applied to a trust that was created in 1941 and became irrevocable in 1942, where, although the public interest served by the amendment (equalizing the inheritance rights of adopted and biological descendants) was important, the amendment appeared to serve that interest in a relatively weak fashion; where the private rights affected by retroactive application of the 2009 amendment were significant; and where the scope of the deprivation of those rights was potentially very great for the biological beneficiary of the trust at issue. [307-315]

CIVIL ACTION commenced in the Norfolk Division of the Probate and Family Court Department on September 30, 2010.

The case was reported to the Appeals Court by *Angela M. Ordoñez,* J., on a statement of agreed facts.

The Supreme Judicial Court granted an application for direct appellate review.

*Wilbur A. Glahn, III (Kimberly Ryan Torrisi* with him) for Rachel A. Bird Anderson.

*Maria L. Rockwell* for John G. Dugan.

[1]Of the trust under the will of Anna Child Bird.

[2]Marten F. Bird and Matthew G. Bird, defendants; and Diana Bird Rosique, Julieanne P. Bird, Kristina Bird, and Zvia Noelle Bird, interested parties.

*Steven B. Rosenthal* for Michael Podolski.

*Kevin J. Willis,* for BNY Mellon, N.A., was present but did not argue.

The following submitted briefs for amici curiae:

*David S. Weiss, Laura E. D'Amato, & Brian P. Thurber* for Douglas D. Lee.

*Martha Coakley,* Attorney General, *& Tori T. Kim,* Assistant Attorney General, for Attorney General.

*Lisa C. Goodheart* for Boston Bar Association.

*Benjamin G. Robbins & Martin J. Newhouse* for New England Legal Foundation.

*Paul F. Donovan* for Joseph Lee, IV, & others.

BOTSFORD, J. In 1941, Anna Child Bird (Anna[3]) executed a will with a testamentary trust that benefited her son, her grandsons, and their issue; Anna died in 1942. At the time the will was executed, G. L. c. 210, § 8 (§ 8), a statute prescribing a rule of construction for certain types of instruments relating to inheritance, provided that unless the contrary "plainly appear[ed] by the terms of the instrument," an adopted child was excluded from the definition of " 'child,' or its equivalent" unless the child had been adopted by the person creating the testamentary instrument. In 1958, § 8 was amended (1958 amendment) in a way that effectively reversed the presumption concerning adopted children and issue: the term "child" or its equivalent was redefined to include an adopted child generally (i.e., not only where the settlor, grantor, or testator was the adopting parent), unless a contrary intent "plainly appear[ed]" in the instrument. By its terms, however, the 1958 amendment applied only to wills, trusts, and the like executed after its effective date, August 26, 1958. See St. 1958, c. 121, § 3. In 2009, the Legislature enacted another amendment to § 8 (2009 amendment) that was effective July 1, 2010, and that made the 1958 amendment applicable to all testamentary instruments regardless of when executed.[4]

---

[3]We use first names because multiple family members have the same surname.

[4]The amendment, which first appeared in St. 2008, c. 524, § 2, was approved by the Legislature on January 15, 2009, and by St. 2009, c. 27, §§ 102, 160, was made effective July 1, 2010. Although the 2009 amendment applies

Rachel A. Bird Anderson (plaintiff) is the biological great-grandchild of Anna, and she has two adopted brothers, Marten F. Bird (Marten) and Matthew G. Bird (Matthew).[5] Since the death in 2007 of her father David Bird (David) — who was one of three biological grandsons of Anna — the plaintiff has been receiving income distributions from the testamentary trust established by Anna in her will; as adopted great-grandchildren of Anna, Marten and Matthew have not. The question presented is whether the 2009 amendment constitutionally may be applied retroactively to Anna's trust, with the effect that the plaintiff's interest in the trust would be divided into three parts to cover her and her two adopted brothers. We conclude that it may not.[6]

1. *Background.*[7] a. *Anna Child Bird trust.* Anna executed her will on December 31, 1941. The will created, on her death, a trust (ACB trust) benefiting her son, Charles Sumner Bird, Jr. (Charles Jr.); Charles Jr.'s wife, Julia Bird (Julia); her grandsons, Charles Sumner Bird, III (Charles III), David, and Christopher Bird (Christopher); and the issue of her son and grandsons.[8]

The provisions of the ACB trust pertinent to this case concern Anna's three grandsons and their issue. Under those provisions, while Charles III, David, and Christopher were all living, Charles III was to receive one-half of the balance[9] of the trust income, and David and Christopher were each to receive one-quarter; if

---

to all testamentary instruments, it does not affect the validity of "distributions made before July 1, 2010 under testamentary instruments executed before September 1, 1969." St. 2009, c. 27, § 102.

[5]Rachel A. Bird Anderson (plaintiff), Marten F. Bird (Marten), and Matthew G. Bird (Matthew) all were born long after the death of Anna Child Bird (Anna).

[6]We acknowledge the amicus briefs of Douglas D. Lee; the Attorney General; Boston Bar Association; New England Legal Foundation; and Joseph Lee, IV, Kathleen Lee Deminico, Jonathan K. Lee, Deborah S. Lee, and Carolyn G. Lee.

[7]The facts are taken from the parties' statement of agreed facts, as well as exhibits A through E to the plaintiff's complaint for declaratory judgment. The parties have agreed that the exhibits are true, accurate, and complete.

[8]Anna's testamentary trust (ACB trust) expressly excluded her grand-daughter (the daughter of Charles Sumner Bird, Jr. [Charles Jr.]), and her issue.

[9]"Balance" refers to the provision of the ACB trust authorizing income distributions to Anna's son, Charles Jr., and her daughter-in-law, Julia Bird (Julia). Both have been deceased for many years.

either David or Christopher were to die leaving issue during Charles III's lifetime, then his issue would take his share of the income. After Charles III died, the income was to be paid to the issue of Anna's son, Charles Jr., by right of representation — i.e., the three grandsons and their issue. The ACB trust provides that it is to terminate twenty-one years after the death of the last survivor of Charles Jr., Julia, and the children and grandchildren of Charles Jr. living at Anna's death; and on termination, the principal is to be paid to the then income beneficiaries in the same proportions as they are entitled to receive income distributions. Neither the ACB trust nor Anna's will defines the term "issue."

On November 19, 1942, Anna died, and the ACB trust became irrevocable. At the time of her death, there were no adopted children in any generation of the Bird family. Marten was born in 1965, and Matthew in 1970; the record does not indicate when they were adopted by David. The plaintiff was born in 1967. David died on October 28, 2007, and at the time of his death, Charles III was still living. Accordingly, under the terms of the ACB trust, David's issue then assumed his one-quarter interest in the trust income at his death, and the plaintiff, as David's only biological child, began to receive a distribution of twenty-five per cent of the trust income quarterly. Marten and Matthew did not receive any income distribution because the ACB trust, having been created before 1958, was interpreted in accordance with the presumptive rule of construction in § 8 prior to the 1958 amendment, and as adopted children of a grandson who was not the testator, Marten and Matthew were not considered to come within the definition of "child" or its equivalent, "issue." Charles III died on April 20, 2010, and we infer that he was the last of Anna's grandsons to die. After his death, under the terms of the ACB trust, the trust income was distributed to the issue of Charles Jr. by right of representation. The plaintiff began receiving a distribution of fifty per cent of the trust income, while Marten and Matthew continued to receive nothing.[10]

---

[10]It appears that because Christopher Bird (Christopher) also was deceased by the time of the death of Charles Sumner Bird, III (Charles III), the remaining fifty per cent of the ACB trust income has been divided equally among Christopher's four biological daughters.

On July 19, 2010, a few weeks after the effective date of the 2009 amendment, the plaintiff received a notice from the defendant, BNY Mellon, N.A., the trustee of the ACB trust (trustee). The notice informed her that in light of the 2009 amendment, Marten and Matthew were now considered "issue" of Charles Jr. for purposes of the ACB trust and were therefore income beneficiaries under the trust. Accordingly, the notice stated, in the future, the plaintiff, Marten, and Matthew would split the fifty per cent income interest three ways, meaning that the plaintiff's share of the income would be reduced from fifty per cent to sixteen and two-thirds per cent, and Marten and Matthew would each begin receiving an equivalent share.[11]

b. *Julia Bird trust.* Julia, the grandmother of the plaintiff, Marten, and Matthew, established a charitable lead trust (JB trust) on April 9, 1981. The JB trust terminated in February, 2008, twenty-five years after Julia's death in 1983, and the trust principal was paid as follows: one eighth each to Marten and Matthew, and the remainder in equal shares to Julia's then-living great-grandchildren, specifically including the children of Marten and Matthew. The plaintiff was not a beneficiary of the JB trust. Julia did not explain in the trust instrument why she chose this distribution scheme, nor does an explanation appear anywhere in the record.

c. *Procedural history.* On September 30, 2010, the plaintiff filed a complaint in the Probate and Family Court, seeking a judgment declaring that the 2009 amendment is unconstitutional, at least as applied to the ACB trust; the complaint names the trustee, Marten, and Matthew as defendants, and the four biological daughters of Christopher as "interested parties." On the plaintiff's motion, two guardians ad litem were appointed, one to represent the interests of Anna's unborn and unascertained

[11]Although the notice did not address what would happen once the ACB trust terminates, if the 2009 amendment were to apply, then at termination the trust principal would be divided in the same proportions, with the plaintiff, Marten, and Matthew each receiving a sixteen and two-thirds per cent interest. It appears from the information in the parties' statement of agreed facts that Anna had no great-grandchildren at the time of her death in 1942. Accordingly, because both David Bird (David) and Christopher predeceased Charles III, the termination date for the trust is measured from Charles III's death in 2010, meaning that the ACB trust will terminate in 2031.

biological descendants, and one the interests of Anna's unborn and unascertained adopted descendants. On October 6, 2011, the motion judge allowed the plaintiff's assented-to motion to report the case to the Appeals Court. We granted the plaintiff's application for direct appellate review.

2. *Discussion.* We first explore the history of the amendments to § 8 in greater detail. We next address the question whether § 8 is merely an evidentiary rule and therefore raises no constitutional concerns when applied retroactively. Because we conclude that constitutional questions are implicated, we then turn to an analysis whether the 2009 amendment may be applied retroactively in this case.

a. *History of amendments to G. L. c. 210, § 8.* As mentioned, the 1958 amendment prospectively reversed the presumption applicable at Anna's death, such that in post-1958 testamentary instruments, the word "child," or its equivalent, was defined to include an adopted child regardless whether adopted by the settlor, grantor, or testator, unless the instrument indicated otherwise. See *Watson* v. *Baker*, 444 Mass. 487, 492 (2005). Section 8 was rewritten by St. 1969, c. 27 (1969 amendment), which expanded the statute's application to include expressly the terms "grandchild," "issue," "heir," "heir-at-law," and their equivalents. More importantly, it provided that the presumption of inclusion of adopted persons in the definition of these terms "shall be applicable to all [instruments] whether the same were executed or effective before or after the effective date of this act," except that the presumption would not apply to any pre-1958 instrument "with respect to any interests or right therein which had vested prior to the effective date of this act." St. 1969, c. 27, §§ 1, 2.[12]

In a series of cases, this court interpreted the term "vested"

---

[12]In relevant part, St. 1969, c. 27 (1969 amendment), provides as follows:

"Section 1. The words 'child,' 'grandchild,' 'issue,' 'heir,' or 'heir-at-law,' or their respective equivalents, in a grant, trust settlement, entail, devise or bequest, shall include one who is adopted to the same extent as if born to the adopting parent or parents in lawful wedlock . . . unless the contrary plainly appears by the terms of the instrument.

"Section 2. The provisions of [G. L. c. 210, § 8], as amended by [§ 1] of this act, shall be applicable to all grants, trust settlements,

in § 2 of the 1969 amendment to mean the point at which "the interest is sufficiently established to constitute an interest or right which had accrued to its holder" and "subject only to total or partial defeat by biological events." *Billings* v. *Fowler*, 361 Mass. 230, 240-241 (1972) (*Billings*). See *New England Merchants Nat'l Bank* v. *Groswold*, 387 Mass. 822, 827-828 (1983); *Davis* v. *Hannam*, 369 Mass. 26, 31 (1975); *State Street Bank & Trust Co.* v. *D'Amario*, 368 Mass. 542, 549-550 (1975); *Boston Safe Deposit & Trust Co.* v. *Dean*, 361 Mass. 244, 247-248 (1972). The court in *Billings, supra* at 241-242, suggested that one reason for the inclusion of the savings provision for vested rights may have been to remove constitutional doubts that would have arisen if the 1969 amendment purported to apply to all testamentary instruments. In 1975, the Legislature again amended § 8 to make the 1969 amendment applicable only to instruments executed after September 1, 1969 — the effective date of the 1969 amendment — thereby ending any controversy over its retroactive application. St. 1975, c. 769, § 3.

This was the state of the law until the passage of the 2009 amendment, which unequivocally and without exception gave full retroactive application to the 1969 definitions of the terms "child," "grandchild," "issue," "heir," and "heir-at-law." See St. 2008, c. 524 ("[General Laws c. 210, § 8,] shall apply to all grants, trust settlements, entails, devises, or bequests *executed at any time*" [emphasis added]). The plaintiff argues that retroactive application of the 2009 amendment to the pre-1958 ACB trust violates art. 10 of the Massachusetts Declaration of Rights,[13] because it redistributes to her adopted brothers her

---

entails, devises or bequests whether the same were executed or effective before or after the effective date of this act provided that said provisions shall not apply to any such grant, trust settlement, entail, devise or bequest which was executed or effective prior to August [26, 1958,] with respect to any interests or right therein which had vested prior to the effective date of this act."

[13]Article 10 of the Massachusetts Declaration of Rights provides, in pertinent part: "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws. . . . [N]o part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people."

constitutionally protected, vested property interests without due process of law.[14]

The Attorney General responds that applying the 2009 amendment retroactively raises no constitutional problems, arguing that the amendment is nothing more than an evidentiary rule and that the plaintiff has no vested property right in the application of an evidentiary rule. She also contends that under a line of cases that construe evidentiary rules as procedural — and therefore not changing the substantive law on which parties were entitled to base their prior conduct — there is no constitutional difficulty raised by applying the 2009 amendment to the ACB trust. See, e.g., *Tobin's Case*, 424 Mass. 250, 255-256 (1997) (rebuttable presumption of noneligibility for workers' compensation benefits for workers over age sixty-five who have not worked for at least two years and are eligible for retirement benefits is procedural and may be applied retroactively); *Smith v. Freedman*, 268 Mass. 38, 40-41 (1929) (rebuttable presumption that motor vehicle involved in accident was under control of person for whose conduct vehicle's owner was responsible does not change substantive law of negligence and may be applied retroactively).

We agree with the Attorney General that the 2009 amendment provides a rule to aid in the construction of wills and trust instruments and does not vest substantive rights in anyone. See *New England Merchants Nat'l Bank* v. *Groswold*, 387 Mass. at 829. However, a determination that the plaintiff has no vested right in the operation of this statute does not end the inquiry. What the plaintiff does have is a substantial interest in the ACB trust — in part an expectation interest but in part an actual interest by her receipt of trust income beginning in 2007. This interest will be significantly harmed if the presumption contained in the 2009 amendment is applied to the trust. The ACB trust exists independently of any statute. It was created by a private person operating in the private sphere, bestowing expectations and interests on her descendants. The settled law in this Com-

---

[14]BNY Mellon, N.A., the trustee of the ACB trust, has declined to take a position on the constitutionality of the 2009 amendment. Neither Marten nor Matthew has filed an appearance or a brief in this case, nor have Christopher's biological daughters done so.

monwealth is and has been that one executing a will or trust
and distributing property thereby is entitled to rely on the law in
effect at the time the instrument was created. See, e.g., *Boston
Safe Deposit & Trust Co.* v. *Wilbur*, 431 Mass. 429, 435 (2000),
quoting *Johnson* v. *Johnson*, 215 Mass. 276, 285 (1913) ("The
testator . . . may be fairly assumed to rely upon the law of this
Commonwealth for the rules to be applied in the interpretation
of his testamentary words").[15]

The 2009 amendment presumably was intended to serve the
public interest of equal treatment for adopted and biological
children. We have no question that this is a laudable public
policy goal, one the Commonwealth generally has advanced for
many years. Unlike the Attorney General, however, we think
there is a constitutional question here that affects the Legislature's
right to further the goal in the manner it has chosen. The
constitutional question is not whether the 2009 amendment to
§ 8 directly results in deprivation of the plaintiff's property.
Rather, it is whether retroactive application of the change in
§ 8 to irrevocable, pre-1958 testamentary instruments, affecting
both what beneficiaries receive or have a substantial expectation
of receiving under those instruments and the dispositional choices
of testators, settlors, and grantors, is unreasonable and therefore
in violation of substantive due process. This is the question to
which we turn next.

b. *Constitutionality of the 2009 amendment as applied.* There
are constitutional limitations on the Legislature's power to enact
retroactive statutes — in brief, such statutes must "meet the test
of 'reasonableness.' " *American Mfrs. Mut. Ins. Co.* v. *Commis-*

---

[15]See also *Watson* v. *Baker*, 444 Mass. 487, 495 (2005), quoting *Davis* v.
*Hannam*, 369 Mass. 26, 32 (1975) (in 1936, testatrix "executed her will 'with
assistance of counsel, and it would not be unreasonable to assume that the
testat[rix] was familiar with the law governing adopted issue, which had been
in effect since 1876, and that if [the testatrix] had wished to include adopted
issue [she] would have done so in accordance with the law' "); *Powers* v.
*Wilkinson*, 399 Mass. 650, 654 (1987) ("This rule of construction was opera-
tive at the time the trust in question was executed, and it concludes the ques-
tion of the donor's intent. Because nothing indicates an intent by the donor to
include nonmarital issue, precedent requires us to presume that the donor
intended, in accordance with the law extant at the time the instrument was
executed, to exclude nonmarital descendants from the class denoted by her
use of the word 'issue' ").

*sioner of Ins.*, 374 Mass. 181, 189 (1978) (*American Mfrs.*). "Only those [retroactive] statutes which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional." *Id.* at 189-190.

We must apply every rational presumption in favor of the 2009 amendment's constitutionality, and the plaintiff bears the burden of showing otherwise. See *Pielech* v. *Massasoit Greyhound, Inc.*, 441 Mass. 188, 193 (2004). "Ultimately, the 'principal inquiry — as to reasonableness — is essentially a review of whether it is equitable to apply the retroactive statute against the plaintiff[].' " *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 788 (2008) (*Doe*), quoting *American Mfrs.*, *supra* at 191. We consider three factors in assessing reasonableness: the nature of the public interest motivating the 2009 amendment's enactment, the nature of the rights affected retroactively, and the extent of the 2009 amendment's impact on those rights. *American Mfrs.*, *supra.*

i. *Nature of public interest.* The 2009 amendment does not contain a preamble or other statement explaining what motivated the Legislature to enact it. However, as we have indicated, and as the parties agree, the Legislature most likely was attempting to equalize the inheritance rights of adopted and biological descendants. Although equal treatment of persons is certainly an important public interest, "the inquiry is not only whether the Legislature's stated public interest is important, but also whether that interest is reasonably served by the statute." *Doe*, 450 Mass. at 790 n.16. The answer to that inquiry in this case is not so clear.

Approximately fifty-two years separate the passage of the prospective-only 1958 amendment to § 8 from the effective date of the retroactive 2009 amendment in 2010. Accordingly, families had over one-half century to make compensatory estate plans in order to correct any inequalities that arose from the presumption of exclusion of adopted descendants under pre-1958 instruments. The opportunity for compensatory planning created by this time gap is illustrated by this case: in 1981, Julia executed the JB trust, which named Marten and Matthew as beneficiaries but not the plaintiff. Application of the 2009 amendment retroactively has the potential to upset the planning of

multiple generations of a family like the Birds and could lead to a situation where there remains unequal treatment of adopted and biological issue, but in the other direction. Moreover, unlike other retroactive laws that have been held constitutional, there is no evidence that an emergency need to provide for adopted children motivated the Legislature to enact the 2009 amendment or that the position of adopted children changed dramatically between 1958 and 2009. Compare, e.g., *American Mfrs.*, 374 Mass. at 192 (retroactivity constitutional in part because "there were urgent reasons, of emergency proportions, for immediate correction of the surprising and substantial impact of 1977 automobile insurance rates on large numbers of citizens of the Commonwealth"), and *Boston* v. *Keene Corp.*, 406 Mass. 301, 312 (1989) (retroactivity constitutional in part because "the record before us contain[ed] ample justification for the legislative conclusion that asbestos is highly toxic and that the public health and welfare require strong and immediate action to abate its hazards"), with *Pielech* v. *Massasoit Greyhound, Inc.*, 441 Mass. at 195 (retroactivity unconstitutional in part because "there [was] no indication that any significant number of persons [would] benefit from or need the retroactivity provision"). In the circumstances, we conclude that the 2009 amendment appears to serve the public interest underlying it in a relatively weak fashion.

ii. *Nature of rights affected.* The key to this case is understanding the nature of the rights that retroactive application of the 2009 amendment affects. In the *Billings* line of cases previously discussed, this court explicitly declined to adopt the technical property law concepts of vested and contingent interests as the measure of when an inheritance right is "vested." *Billings*, 361 Mass. at 240.[16] Instead, we measure the likelihood that the person claiming a vested right will eventually come to enjoy

---

[16]See *State St. Bank & Trust Co.* v. *D'Amario*, 368 Mass. 542, 549-550 (1975) ("Whether a given 'interest' or 'right' is to be called 'vested' as against the adopted child turns on the substantiality of the chances that the person concerned would in fact enjoy the interest or right, apart from any claim by the adopted child, and the substantiality of the threat to that enjoyment that would be created by admitting the adopted child as a taker on the same footing as a biological child"). See also *Boston Safe Deposit & Trust Co.* v. *Dean*, 361 Mass. 244, 247-248 (1972).

that right. Where there is a substantial likelihood, we consider the right vested even if it could be defeated or diminished by biological events such as the potential beneficiary predeceasing a current beneficiary. *Id.* at 241.[17]

Under these principles, the plaintiff has a strong case. It is clear that her interest in the ACB trust vested prior to the effective date of the 2009 amendment, because she had received income distributions from the trust since her father David's death in 2007. See *Boston Safe Deposit & Trust Co.* v. *Dean*, 361 Mass. at 247-248. The case would have been slightly more difficult if David were still alive and she had not yet received any income distributions, but even so, under our case law, her interest in the ACB trust vested at her birth. See *Billings*, 361 Mass. at 241. From the moment of her birth, there was a substantial biological probability that she would survive her father and uncles and become eligible for distributions from the trust, even though her interest could have been reduced by the birth of additional biological siblings or destroyed by her death before her father. *Id.*

Admitting Marten and Matthew to the class of "issue" entitled to be beneficiaries of the ACB trust would cut down the plaintiff's vested interests significantly. If there were no 2009 amendment, the plaintiff would continue to be entitled to receive fifty per cent of the income of the ACB trust, and to be eligible to

---

[17]The Attorney General argues that the line of cases following *Billings* v. *Fowler*, 361 Mass. 230 (1972), did not address whether the rights at issue were vested sufficiently so as to implicate constitutional concerns, but only whether the rights were vested within the meaning of § 2 of the 1969 amendment, the provision that protected "vested" rights from retroactive application of the statutory presumption. However, given this court's definition of a vested right under the savings provision as one that is "sufficiently established to constitute an interest or right which had accrued to its holder," *id.* at 240, the analysis under § 2 of the 1969 amendment is no different from the analysis used to determine when a right has vested such that retroactive legislation affecting that right may violate substantive due process. If a right has accrued to its holder, then it is necessarily a right that has also vested in the holder. See Black's Law Dictionary 1564 (6th ed. 1990) (defining "[v]ested rights": "In constitutional law, rights which have so completely and definitely accrued to or settled in a person that they are not subject to be defeated or canceled by the act of any other private person, and which it is right and equitable that the government should recognize and protect, as being lawful in themselves, and settled according to the then current rules of law, and of which the individual could not be deprived arbitrarily without injustice").

receive fifty per cent of the principal when the trust terminates. With the passage and retroactive application of the 2009 amendment, the plaintiff would be entitled to receive only sixteen and two-thirds per cent of the ACB trust income and ultimately the same percentage of the principal.[18] As we have noted, *Billings* and its progeny suggest that if such a situation were to occur, the 1969 amendment would be constitutionally suspect. *Billings*, 361 Mass. at 241 ("If such substantial interests were to be taken away from [the biological beneficiaries] by statute, there would be a significant question whether and to what extent this could constitutionally be done. We assume that one reason for the insertion of the 1969 proviso [concerning vesting] may have been to remove constitutional doubts about the validity of the 1969 amendment without it" [footnotes omitted]). See *State Street Bank & Trust Co.* v. *D'Amario*, 368 Mass. at 553.

In addition to the diminution of the plaintiff's vested interests as a beneficiary, the 2009 amendment has an impact on the rights of testatrices, settlors, and grantors like Anna and Julia, who at the time of its enactment were long deceased and unable to change their estate plans in response to its new presumption. The Attorney General argues that the Legislature has the authority to override prior evidentiary rules, and that it is reasonable to apply the new rule retroactively because it is a rational, and rebuttable, presumption of a testator's intent. Although it may be reasonable for the Legislature to make retroactive changes to rules of evidence governing tort or worker's compensation proceedings, such changes are far less reasonable in the area of property law, and particularly regarding the construction of wills and trusts. "There is usually little danger of defeating reasonable expectations" when new tort rules are applied

---

[18]We recognize that, on the surface, application of the pre-1958 presumption seems unfair to the plaintiff's adopted brothers. However, the history of the prospective-only 1958 amendment and the *Billings* line of cases both clearly excluded adopted issue from taking under the ACB trust, before the 2009 amendment. Marten and Matthew did not have the same character of interest in the ACB trust as the plaintiff. That is, their interest, if any, was not vested; it was, at best, a hope, not a settled expectation. Cf. *New England Merchants Nat'l Bank* v. *Groswold*, 387 Mass. 822, 828 (1983) (adopted beneficiary granted no rights under 1969 amendment because biological beneficiary's rights had already vested, precluding application of 1969 amendment).

retroactively because changes in tort law "would not precipitate changes in behavior even if they were widely known." *Leibovich* v. *Antonellis*, 410 Mass. 568, 578 n.7 (1991), quoting Greenblatt, Judicial Limitations on Retroactive Civil Legislation, 51 Nw. U. L. Rev. 540, 567 (1956) (applying new principle of tort law retroactively). See *Papadopoulos* v. *Target Corp.*, 457 Mass. 368, 385 (2010). But we historically have treated property interests and expectations very differently. "In the area of property law, the retroactive invalidation of an established principle is to be undertaken with great caution." *Sullivan* v. *Burkin*, 390 Mass. 864, 871 (1984). Accord *Powers* v. *Wilkinson*, 399 Mass. 650, 662 & n.13 (1987). See *Hawley* v. *Northampton*, 8 Mass. 3, 39 (1811) ("The importance of adhering to a course of decisions, in the construction of wills, is manifest; for their authority has established a rule of property on which many estates depend, and to overturn them would introduce perplexing uncertainty, and might shake many titles resting on the faith of them"). Cf. *Eaton* v. *Federal Nat'l Mtge. Ass'n*, 462 Mass. 569, 588 (2012) (limited circumstances in which court gives prospective effect to its decisions include changes in property law).

Although much of our case law on the unreasonableness of retroactive changes to property law arises in the context of judicial decisions, the concern is equally valid in the legislative context. Regardless of their source — judicial or legislative — we are hesitant to apply rules affecting property rights retroactively because it is likely that testators, settlors, and grantors consult with attorneys and consider the existing state of the law when deciding how to draft instruments conveying inheritances; as noted, *supra*, under established principles, testators, settlors, and grantors are entitled to rely on the state of the law at the time of execution of a trust instrument. See *Watson* v. *Baker*, 444 Mass. at 495, citing *Davis* v. *Hannam*, 369 Mass. at 32. Considering Anna's presumptive reliance interests, along with Julia's, in conjunction with the plaintiff's substantial interest in the ACB trust income and principal, we conclude that the private rights affected by the 2009 amendment are significant.

iii. *Extent of impact.* Finally, we must consider the extent to which the 2009 amendment abrogates those significant rights.

*American Mfrs.*, 374 Mass. at 195-196. Factors this court has taken into account include whether the retroactive legislation is short-term or of "infinite duration," and whether it is narrowly tailored to address the concerns that motivated its enactment. *Doe*, 450 Mass. at 792. *American Mfrs.*, *supra* at 196. In this case, the retroactive legislation is infinite in duration, although limited by the operation of the rule against perpetuities, which eventually will lead to the termination of all pre-1958 trusts.[19] Although there may no longer be many pre-1958 trusts that still are making distributions and that have a class of potential beneficiaries that includes both biological and adopted issue, the scope of the deprivation of what we recognize as a significant interest is potentially very great for biological beneficiaries like the plaintiff.[20] The 2009 amendment also is not tailored narrowly to meet its goal of equalizing the inheritance rights of adopted descendants, because its application is not limited to situations in which applying the pre-1958 presumption would work injustice to adopted descendants in light of all the circumstances as they exist today, including compensatory estate planning by other family members between the effective dates of the 1958 and 2009 amendments.

iv. *Balancing.* "When considering the retroactive application of civil statutes, we balance 'opposing considerations.' " *Doe*, 450 Mass. at 793, quoting *Leibovich* v. *Antonellis*, 410 Mass. at 577. To summarize the previous discussion, the 2009 amendment redistributes the plaintiff's significant, vested property rights, and although the goal of ensuring equal inheritances for adopted and biological children is commendable, the effectiveness of the 2009 amendment in serving this interest is questionable because it fails to take into account the opportunity for compensatory estate planning after the enactment of the 1958

---

[19]The rule against perpetuities "places a limit on how long certain types of trusts may continue." *Hochberg* v. *Proctor*, 441 Mass. 403, 414 (2004). It is "classically defined as the rule that '[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.' " *Id.* at 406 n.8, quoting J.C. Gray, Rule Against Perpetuities § 201 (4th ed. 1942).

[20]We are aware of at least one other trust in a similar situation, because the family members involved have submitted amicus briefs in support of both sides of this case.

amendment.[21] On balance, the retroactive application of the 2009 amendment to the plaintiff is not reasonable.

We recognize that other States have decided this issue differently. See, e.g., *Purifoy* v. *Mercantile-Safe Deposit & Trust Co*, 398 F. Supp. 1082, 1084-1085 (D. Md. 1975), aff'd, 567 F.2d 268 (4th Cir. 1977) (no due process violation because presumption of inclusion of adopted children is rule of evidence and evidentiary rules are procedural and may be applied retroactively); *First Nat'l Bank* v. *King*, 165 Ill. 2d 533, 542-543 (1995) (same); *Peele* v. *Finch*, 284 N.C. 375, 382 (1973) (no due process violation because biological beneficiaries held contingent, rather than vested, interests); *Prince* v. *Nugent*, 93 R.I. 149, 164-165 (1961) (no constitutional violation because biological beneficiary's rights were not vested and presumption is evidentiary rule with prospective application at time instrument is construed). But see *McClain* v. *Taylor*, 904 P.2d 1316, 1319 (Colo. 1995) (holding that "wills should be construed by the law as it existed when the testator died, thereby excluding adopted children as beneficiaries unless the will indicates an intent to include adopted children"); *Thomas* v. *Trust Co. Bank*, 247 Ga. 693, 693 (1981) ("In order to effectuate the testator's intent . . . the adoption laws in effect at the date of the testator's death will determine the class of beneficiaries entitled to take under a testamentary trust in the absence of an express contrary intent"). Considered in light of our own common law and approach to retroactivity of statutes, we believe that the cases upholding retroactive application give insufficient weight to the substantiality of the interests enjoyed by the plaintiff and other biological beneficiaries and the bedrock principle that a testator is entitled to rely on the state of law at the time of execution of a testamentary instrument. Accordingly, we reach a different result.

Although our discussion has focused on the factual situation before us, what we have said presumably applies to others who, like the plaintiff, have significant interests in pre-1958 trusts or

---

[21]Even if Julia had not engaged in compensatory estate planning, we would still find the law unreasonable, because of the potential for such planning over the fifty-two year period between the effective dates of the 1958 and 2009 amendments.

other grants or devises, subject only to divestment by predeceasing an existing beneficiary or to dilution through the birth of others. Because of the uncertainty whether the 2009 amendment could constitutionally be applied retroactively, we think it is appropriate to clarify that our decision does not make unreasonable any distributions to adopted beneficiaries made in reliance on the 2009 amendment between July 1, 2010, and the date of this opinion, nor does it make unreasonable a trustee's declination to make such distributions. Although "[b]eneficiaries of a trust are entitled to the protection of the courts where there is a clear abuse of discretion or where the exercise of judgment by a fiduciary is clearly inconsistent with a due appreciation of his responsibilities as a fiduciary," *McMahon* v. *Krapf*, 323 Mass. 118, 124 (1948), in light of the uncertain state of the law, neither of the above-mentioned actions would be an abuse of discretion or clearly inconsistent with a trustee's responsibilities.

3. *Conclusion.* The case is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

*So ordered.*